[Crim. No. 2512.   First Dist., Div. Two.   Aug. 25, 1948.]

THE PEOPLE, Respondent, v. EARL J. BROWN, Appellant.

Bauer E. Kramer and Cameron E. Wolfe for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, J. F. Coakley, District Attorney, Cecil Mosbacher and Frank D. Parker, Deputy District Attorneys, for Respondent.

GOODELL, J.—Appellant was accused by an information in four counts of violating sections 261, 286, and 220, of the Penal Code, and the Deadly Weapons Control Act [Stats. 1923, p. 695; 1 Deering's Gen. Laws, Act 1970]. Two prior convictions in Illinois were pleaded. He entered pleas of not guilty and denied the prior convictions. The charge of the second prior conviction was dismissed before trial. The jury returned a verdict of guilty of each of the four offenses and found true the allegation of the first alleged prior conviction. A motion for new trial was denied and this appeal was taken. Counsel now appearing for appellant were assigned to represent him on this appeal and did not participate in the trial.

The first point presented is that the testimony of the complaining witness is inherently improbable and that the verdicts were the result of passion and prejudice.

On Saturday evening, October 20, 1945, at about 11 o'clock, according to the testimony of the complaining witness (who was over 18), she and the appellant became acquainted, without introduction, at a dance hall in Oakland, where they danced together. When the hall closed at midnight they went to a restaurant and it was later agreed that they would go to a night club. Appellant hailed a taxicab and directed the driver to take them to 14th and Willow Streets. On arrival they approached a building which the complaining witness thought was a night club. It was, in fact, a men's dormitory. Appellant rapped on the window of one of the rooms and asked its occupant to let him in, saying "This is 'Brownie.' " The occupant did so, and the couple entered appellant's room over the protest of the complaining witness, who said, "I thought you were taking me to a night club." The details of what ensued need not be recounted. According to the complaining witness the acts denounced by sections 261 and 286 were committed. She testified that appellant at first held a gun as if to use it as a bludgeon and later pointed it at her, threatening to kill her.

When she left the place she started to walk to her sister's home and on the way saw a man wearing a uniform which she mistook to be that of a police officer. She complained to him of what had happened and he escorted her to her sister's home. This was in the early hours of Sunday. That evening she reported the occurrence to the police and on the following Tuesday, accompanied by two inspectors, she went to appellant's place of employment, where he was taken into custody. The inspectors later took him to his room, where they found

a loaded gun in a bureau drawer and a cap bearing the name of his employer, which cap, the complaining witness testified, she had seen in the room and had made a mental note thereof which enabled her to direct the inspectors to appellant's place of employment.

Five of the incidents testified to by the complaining witness were admitted by appellant in his testimony. He admitted being at the dance hall which she had named, and said that he might have danced with her. He admitted going afterward to the restaurant which she had named, but not with her. He admitted going home in a taxicab, but not in her company. She testified that between dances she accompanied appellant to a refreshment bar in the hall; that he took a bottle from his pocket and while pouring from it a special officer interrupted and prevailed on appellant to leave the bottle with him. This was done and appellant reclaimed it on departing. Appellant on cross-examination recalled "some gentleman taking a bottle of whiskey from me" at the dance. Respondent argues, in answer to the claim of inherent improbability, that the complaining witness could not have testified to these five incidents unless she had been in appellant's company, and we must say that it is difficult to avoid that conclusion.

In addition to these admissions of appellant dealing with preliminary incidents, the testimony of the complaining witness is corroborated in several important particulars by four disinterested witnesses. The lodger who answered appellant's rap on the window and opened the door, occupied the room adjoining that of appellant and testified that he heard appellant say "Take off your clothes, all of them," and the voice of a woman pleading with him not to hurt her and saying "Put the gun away, Brownie." The physician who examined the complaining witness two days after the occurrence testified to certain conditions of her body which definitely bore out her testimony. The man in uniform whom she met on the street and to whom she complained after the occurrence, identified the complaining witness and testified that "She said that a man had forced her at the point of a pistol and she pointed up to a room up the street to the house——." The special officer testified that he saw the complaining witness with the appellant at the dance; that he took the bottle from appellant, and saw them leave the hall together.

Appellant admitted in his testimony that he had a woman companion in his room on the night in question but flatly denied that she was the complaining witness. When

questioned as to her identity he said she was the wife of a friend of his, and that he would not disclose her name. It is argued that this admission with respect to a friend's wife so inflamed the jury against appellant that the verdicts were based on passion and prejudice rather than the result of a calm and dispassionate weighing of the evidence. There is no claim of insufficiency of the evidence to support the verdicts and, of course, could not be in view of the abundant corroboration. There is no merit to this claim of passion and prejudice. The question was purely one of fact and of credence, and no appellate court reviewing the record on a transcript of the testimony could say that the jury was prejudiced against the appellant rather than that they were convinced that he was guilty of just what the prosecution claimed.

In *People* v. *Dorland*, 2 Cal.2d 235, 243 [40 P.2d 474], it is said "While it has been held that a verdict may be set aside where the entire evidence is so improbable and incredible as to amount to no evidence at all, the rule is that such improbability must amount to incredibility and must very clearly appear in order to justify a reversal [citations]." In 8 California Jurisprudence, page 590 it is said: ". . . the conclusions of the jury will be overruled only where the *uncorroborated* testimony of the complaining witness is so obviously and so inherently improbable as to leave no recourse, without self-stultification, except to reverse the judgment . . ." (Emphasis added.) The corroboration in this case was such as is rarely found in cases such as this, and it leaves no room whatever for the claim of inherent improbability.

Appellant next contends that the court improperly admitted hearsay evidence of identification of the appellant by the complaining witness.

A police inspector when asked whether, when he went to appellant's place of employment with another inspector and the complaining witness, "there was any conversation between the parties there" answered "At that time the defendant was in the doorway of a box car, and as Inspector Vernon and I walked up, she said, 'That's the man.'" It is argued that there is no evidence that appellant heard this statement or was within hearing distance, and hence that it is hearsay. The preceding questions indicate that all four persons were present together and there is nothing to show that appellant was not within hearing distance. Moreover there was no objection to the question on the ground that it lacked a foundation, or called for hearsay, or otherwise. (*People* v. *Scalamiero*,

143 Cal. 343 [76 P. 1098].) And there was no motion to strike out the answer on the ground that it was unresponsive, or otherwise. In addition to that, at the city jail where, beyond any question, the appellant was in the presence of the complaining witness, she said "That's the man." There is no merit in the point.

Equally without merit is appellant's complaint with respect to an accusatory statement. One of the inspectors testified that the complaining witness was called into the appellant's presence and when she accused him of being the man who raped her he replied "Did you ever see me before?" In the first place this was not objected to, and, secondly, it was an equivocal response which was a proper subject for the jury to weigh (*People* v. *Orloff,* 65 Cal.App.2d 614, 622 [151 P.2d 288] ; *People* v. *Megladdery,* 40 Cal.App.2d 748, 784 [106 P.2d 84]).

Without merit, also, is the contention that it was error to admit the testimony of one of the inspectors that appellant had told him that he had taken a married woman (other than the complaining witness) to his room under circumstances giving rise to the inference that he had committed adultery. Counsel for appellant, however, in examining the appellant, brought out the statement that he had taken the wife of a friend to his room on the night in question, which rendered harmless the inspector's testimony.

The most important point raised by the appellant is that he was convicted of an offense included within other offenses charged.

The third count based on section 220, Penal Code, charged an assault with intent to commit rape and the offense denounced by section 286, Penal Code. Appellant argues that the threat of bodily harm arising from the use of the gun was an integral part of each of these two offenses.

Respondent concedes that a violation of section 220 is included within each of the other completed offenses. (*People* v. *Chavez,* 103 Cal. 407 [37 P. 389] ; *People* v. *Babcock,* 160 Cal. 537 [117 P. 549].) It follows that the judgment of conviction under section 220 prejudices appellant notwithstanding the fact that the sentence on that count was made to run concurrently with the sentences under sections 261 and 286. There is no merit, however, in appellant's contention that the "piling of charge upon charge" was legally prejudicial. Under section 954, Penal Code, it was perfectly proper

for the information to contain the charge of an assault along with that of a completed offense.

Section 1260, Penal Code, provides that "The court may reverse, affirm, or modify the judgment or order appealed from, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."

Under this section, and following the pattern adopted in *People* v. *Craig*, 17 Cal.2d 453 [110 P.2d 403] and *People* v. *Scott*, 24 Cal.2d 774 [151 P.2d 517], the appellant's rights can be amply protected with respect to the overlapping judgment by consolidating the judgments rendered on counts one and three.

Accordingly, the judgment of conviction herein based on a violation of section 261 of the Penal Code and the judgment of conviction herein based on a violation of section 220 of the Penal Code (an included offense) are consolidated and modified to read: "Whereas the defendant Earl J. Brown has been found guilty of the crime of rape, a felony, as defined in subdivision 4 of section 261 of the Penal Code, and of the crime of assault with intent to commit rape, a felony, as defined in section 220 of the Penal Code, and the allegation of a prior conviction having been found true as therein alleged, to wit: of the crime of felony, to wit, assault with intent to commit rape on or about the 21st day of September, 1934, in the Circuit Court of the State of Illinois, County of Macon, pursuant to which he served a term, under the name of Earl Brown, in a penal institution.

"It is therefore ordered, adjudged and decreed that said Earl J. Brown be punished by imprisonment in the State Prison of the State of California at San Quentin for the term prescribed by law."

"Further ordered that the sentence under said section 261 of the Penal Code, and that under section 286 of the Penal Code and that under the fourth count of the information for a violation of the Deadly Weapons Control Act, run consecutively, as heretofore adjudged and determined."

As thus modified, the judgment and orders are affirmed.

Nourse, P. J., and Griffin, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 23, 1948.