[Crim. No. 2275. Fourth Dist., Div. One. Apr. 19, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE EDWARD PARGO, Defendant and Appellant.

J. Perry Langford, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert P. Samoian, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J.—Defendant appeals from a judgment on jury verdict finding him guilty of grand theft from the person, and of attempted robbery, in violation of Penal Code, section 487, subd. 2.

At about 5 a.m. of November 8, 1964, John Leonard Vogan and Charles Cleaver were offered a ride in a car whose driver thereafter forcibly removed from Vogan's wrist a 17-jewel Benrus watch and who, after Vogan and Cleaver alighted

from the car, armed himself with a tire iron with which he approached Vogan while demanding a diamond ring which the latter wore. His demand was refused; he then reentered the car and drove away.

A description of the car and driver was circulated by police. About 1:15 a.m. of November 14, defendant, who answered the description of the driver, was seen in a car that answered the description of the car. The car was then being driven by its owner, Mrs. Deweylene Lee. Defendant was arrested.

Vogan and Cleaver identified defendant as Vogan's assailant, and Mrs. Lee's car as appearing to be the car in which they had ridden.

On November 12, defendant pawned, for five dollars, a 17-jewel Benrus watch of the same type as the stolen watch. On November 14, following his arrest and release on bail, defendant redeemed the watch.

Defendant testified that on November 8 he was continuously at the home of Mrs. Moss, a sister of Deweylene Lee, from a time prior to midnight of the previous day until about 12 o'clock noon. He denied that he had committed either crime or that he had been in Mrs. Lee's car the morning of November 8, and declared that the Benrus watch he had pawned was his own.

Mrs. Moss corroborated defendant's testimony that he had been in her home during the relevant period.

Mrs. Lee, who lived with Mrs. Moss, testified that she had been away from home with the car from the night of November 7 until about noon of November 8; that defendant had not been in the car during that period. On cross-examination, Mrs. Lee, over objection, was asked about her use, and the availability for use by her, of a second automobile, a Thunderbird, which she said belonged to her fiance, and as to the periods during which it had been in her possession. She had been interviewed by an investigator from the district attorney's office concerning defendant's possible use of her car on November 8. On cross-examination, she was asked if she had made a statement as to the reason for her being at home on the day of the interview, which she denied. On rebuttal, a witness was called for the purpose of contradicting her testimony as to the period of time she had had possession of the Thunderbird car, another to contradict her testimony that she had not made the questioned statement as to her reason for being home when interviewed by the investigator.

On cross-examination, over objection that it was improper

cross-examination, defendant testified that he had, on August 3, 1964, pawned two women's wristwatches; without further objection, he was asked if, and stated that he had, on February 15, 1965, pawned a man's Elgin wristwatch. The defendant volunteered the further information that before August 3, 1964, he had also pawned another woman's watch and a ring.

Defendant was cross-examined, over objection, about a traffic citation issued to him on October 16, 1964, when he was driving Mrs. Lee's car. He had testified that he had never driven the car south of National City. He admitted having received the citation and said there were other people with him in the car at the time. On rebuttal, the officer who had issued the citation testified that defendant was alone in the car; that the incident occurred some 5 miles south of National City and 2 miles north of the Mexican border, and that defendant had said he was returning from Tijuana.

On cross-examination of defendant, he was asked if he had been using heroin during the period when the crime was committed. Objection was made. The district attorney explained his purpose of testing the witness' memory, ability to narrate and perception. He produced evidence that sufficiently showed a belief in good faith that defendant was a heroin user. The objection to the question was overruled; a negative answer was given by the witness.

The district attorney, over objection, obtained from defendant information that on May 7, 1965, defendant had registered under section 11850, Health and Safety Code, with the San Diego Police Department because his probation officer had told him to register, and a further denial that defendant was using narcotics on the date of the theft and attempted robbery; a denial that "as far back as February 1964, he was using narcotics"; an admission that during 1964 he had spent a period of time in local confinement for the use of narcotics; a statement that the period of confinement was for being in possession of an "outfit" in a residence where he was visiting; and a denial that he had been under the influence of a narcotic at any time in the year 1964, or was an addict.

In rebuttal, Dr. Williams, a medical doctor, testified that as police physician he had examined defendant on February 21, 1964, for the purpose of determining whether defendant was using or under the influence of or addicted to a drug or narcotic; that such examination produced the following: ". . . the eye pupils were constricted and reacted poorly to light,

and I noted the following marks on his arms: in the left elbow fold, in a scarred vein, there were fifteen needle marks; and in the right elbow fold, there was also a scarred vein, but there were no recent needle marks seen. I estimated the ages of these needle marks to vary from fresh; that is, within a few hours old, to about a week old''; that on questioning by Williams, defendant contended the needle marks were old marks; that in Williams' opinion defendant at the time of the examination was under the influence of a narcotic, probably heroin.

Following the testimony of Williams, the court admonished the jury as follows: ''The jury is at this time admonished that as to the testimony given by this witness, you may not consider the testimony so given in determining the truthfulness or untruthfulness of the statements made by the defendant on the witness stand. You may consider them solely and only as to whether there has [been], as a result of the use of the drug, if there has been such a use, a dulling of perception and memory and ability to narrate, and that it is the only purpose and only basis on which you may consider the testimony as given by the doctor.''

Among the instructions given to the jury before submission was this: ''Evidence was offered in this case for the purpose of showing that the defendant committed another crime than the ones of which he is accused and for which he is on trial in this action, namely, that on February 21, 1964, the defendant was under the influence of a narcotic.

''Such evidence was received for a limited purpose only and not to prove distinct offenses or continual criminality. The original inquiry regarding defendant's use of narcotics was made solely in connection with defendant's perception, memory and ability to narrate, which are proper inquiries raised when the defendant becomes a witness. Having chosen to extend the scope of inquiry by a complete denial of use of narcotics, the defendant may properly be met by contrary proof if available.'' (CALJIC 33 Modified.)

At the time for pronouncement of judgment, the court sentenced defendant to prison for attempted robbery, and stated that imposition of the sentence on the grand theft conviction was suspended until completion of the attempted robbery sentence, when the stay would become permanent. The written minutes, dated June 3, 1965, however, recited that defendant was sentenced for both offenses for the term prescribed by law. On June 11, the minutes of the court were entered *nunc pro tunc* as of June 3, stating that defendant was sentenced as to

both counts, but that sentence be stayed as to the grand theft count.

## Defendant's Contentions

Defendant contends that it was error to permit the cross-examination of defendant concerning his possible use of heroin and addiction, his registering under section 11850, Health and Safety Code and his conviction and incarceration for a narcotics violation; and to admit the testimony as to the police physician's examination of defendant and his opinion based thereon; that it was error to give the quoted instruction as to the purpose of such evidence because the instruction given assumed that defendant was a liar, and because there was no evidence as to the effect of narcotic use upon the perception, memory or ability to narrate.

Defendant contends further that the trial court erred (a) in permitting cross-examination of defendant as to his pawning of other watches because there was no attempt to show either a series of similar acts or a common scheme; (b) in permitting impeachment of defendant as to the circumstances under which he received a traffic citation on October 16, 1964, because the matter was collateral; (c) in permitting impeachment of Deweylene Lee as to collateral matters; and (d) in entering a judgment imposing sentence as to both counts of the information because such sentences violate Penal Code, section 654.

In giving the questioned instruction and the quoted earlier admonition to the jury, the trial court took judicial notice that addiction to narcotics or their use impairs the testimonial capacity with respect to ability to perceive, remember and narrate.

There is some respectable authority for that position. (See 3 Wigmore, Evidence (3d ed.) § 934, pp. 481-482, and cases there cited.) ▮▮▮ We think it may be safely said that a witness who is intoxicated by a narcotic at the time of the event as to which he is testifying or at the time of testifying will be subject to frailties as an observer and narrator equal to those suffered by one drunk from an alcoholic beverage.

Legislative recognition has been given in Vehicle Code, section 23105, to the possible impairment of the sensory mechanisms incident to being under the influence of a narcotic. Of section 23105, it is said in *People* v. *O'Neil,* 62 Cal.2d 748, at page 751 [44 Cal.Rptr. 320, 401 P.2d 928]: "No question arises as to the legality, or statutory purpose, of this prohibition, which obviously serves to protect the motoring public

from the potential danger of a person at the wheel who is 'under the influence of narcotic drugs.' "

Here there was no evidence or suggestion that at the time of testifying defendant was under the influence of a narcotic, and no evidence that he was under such influence on November 8. The evidence that he was under the influence of a narcotic on February 21, 1964, seems remote from any time as to which such condition could have been relevant.

Professor Wigmore said, concerning a habit of intemperance, as distinguished from actual intoxication at the relevant time: ". . . a general *habit of intemperance* tells us nothing of the witness' testimonial incapacity except as it indicates actual intoxication at the time of the event observed or the time of testifying . . ." (3 Wigmore, Evidence, § 934, p. 481.)

Testimony as to the habitual use of heroin by a witness for five months during the period concerning which she testified was permitted in *People* v. *Bell,* 138 Cal.App.2d 7 [291 P.2d 150]. There the witness was also asked as to the effect of the drug upon her powers of perception and memory. A medical witness gave his opinion as to the effect upon the mental condition of one who used heroin to the extent testified to by the witness sought to be impeached.

■ We believe that in California the possible effect upon the testimonial capacity of a witness of present or past use of a narcotic may not be judicially noticed. We expressly do not hold that a court might not judicially notice the effect upon a witness of his being under the influence of a narcotic either when testifying or at the time of an event concerning which he testifies.

■ We are compelled to reverse because of the lack of any expert evidence of the effect upon testimonial capacity of the use of or addiction to narcotics, especially as to the effect of having been under the influence of a narcotic at a time so seemingly remote from any relevant date as the time of Dr. Williams' examination.

It was error to have given the questioned instruction in the absence of such expert testimony.

While generally it is proper to permit a good-faith inquiry made relevant by proper expert testimony as to the effect of narcotic usage upon the testimonial capacity of a witness, there are hazards in permitting such inquiry as to a defendant in a criminal case who is a witness on his own behalf. Where, as in the present case, there is a complete denial of involve-

ment and a claim as to a clearly remembered alibi, evidence of narcotics usage by a defendant may leave the jury less able to distinguish between an attack upon the testimonial capacity of the witness and an attack upon his subjective intention to be a truthful witness.

### Defendant's Other Contentions

On a retrial, questions may arise as to the admissibility of some of the other evidence to which defendant has taken exception.

The objection was not well taken that it was not proper cross-examination to ask defendant if he had pawned a man's wristwatch other than the Benrus. Defendant had specifically denied the crimes charged. He claimed to be the owner of the Benrus which he pawned and two days later, after his release from custody, redeemed it, although at the time of redemption he was the claimed owner of another watch. Those circumstances, under the prosecution's theory of the case, might have a bearing upon defendant's motive in redeeming the Benrus watch so shortly after pawning it. The testimony as to the pawning of the watches before the date of the alleged crime indicates at least that defendant, at the time of the alleged offense, knew of a method of turning a watch into ready cash and is relevant to motive. There is nothing to indicate that any of the watches other than the Benrus was obtained by theft, so that the pawning of the other watches does not disclose a criminal plan or scheme. The probative effect of the evidence was not great. It would have been greater if the evidence had shown that the Benrus was the only pawned watch that had been redeemed.

The extent of the use by defendant of Mrs. Lee's car was relevant. In view of his claim to restricted use of the car, it was not improper to allow it to be shown that on an occasion shortly before the alleged crime he had been in possession of the car alone while returning from a foreign country. Mrs. Lee, who was employed, and Mrs. Moss lived together with four children. If, instead of only one car, there were two cars available for the use of the menage, there might have been greater opportunity for defendant to have used Mrs. Lee's car on the day of the theft and attempted robbery. Evidence of Mrs. Lee's possession and use of the Thunderbird was, therefore, not wholly irrelevant.

We need not discuss the other points raised on appeal.

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.