[Crim. No. 14613.  Second Dist., Div. Five.  Oct. 9, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHNNY LEWIS ROSS et al., Defendants and Appellants.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant Larry Randolph Hygh.

No appearance for Defendant and Appellant Johnny Lewis Ross.

Thomas C. Lynch, Attorney General, William E. James,

Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

REPPY, J.—Defendant Hygh and a codefendant, Ross, were each charged by information with two counts of robbery in violation of Penal Code section 211, with two counts of kidnaping for the purpose of robbery in violation of Penal Code section 209, and defendant Ross was charged with receiving stolen property in violation of Penal Code section 496. After a second trial by jury (following an initial mistrial because the jury was unable to reach a verdict) each defendant was found "guilty" of both of the robbery counts and the degree was set as first; each defendant was found "guilty" of one but "not guilty" of the other kidnaping for robbery count; and defendant Ross was found "not guilty" of the count for receiving stolen property. The trial judge reduced the guilty verdict of kidnaping for robbery to a violation of Penal Code section 207, as a lesser but necessarily included offense. Each defendant was sentenced to the state prison for the term prescribed by law on one of the robbery counts. The court stayed execution of judgment on the remaining two counts (robbery and kidnaping), such stays to become permanent upon the completion of time served under the robbery count. Both defendants filed timely notices of appeal. However, defendant Ross did not file an opening brief, and we dismissed his appeal under rule 17(a) of the California Rules of Court on September 6, 1968. Defendant Hygh appeals from the judgment of conviction and from the denial of his motion for new trial.

Defendant Hygh (hereinafter, defendant) raises a number of legal arguments on appeal, which we take up seriatim with a concurrent exposition of the facts relevant to each argument.

1. The prosecution's primary eyewitness was improperly "primed" by the arresting officer before testifying. We conclude he was not.

On March 2, 1967, four Negro males entered a men's clothing store on Pico Boulevard in Los Angeles. One of them put a gun in the back of a salesman, Robert Jaeke, and ordered him and the store manager, Leon Marks, to lie face down on the floor. Both Jaeke and Marks obeyed. Then the man demanded that the manager open the back door. He did and returned to his prone position on the floor. This same man instructed Jaeke and Marks, "Keep your head [sic] down or

we'll blow your head [*sic*] off.'' Both Marks and Jaeke could hear clothing being removed from the racks and carried through the rear door.

At the second trial, which is the consideration of this appeal, Jaeke testified that he was able to directly observe the man who had placed the gun at his back and had been the principal speaker for an accumulated time of 10 minutes, and he made an unequivocal court room identification of defendant as that man. On cross-examination, Jaeke testified that within a few days after the robbery (following two lineups wherein he was unable to identify anyone as a potential suspect)[1] he pointed out defendant from a group of 10 pictures. Upon further cross-examination, Jaeke revealed that before he had testified at the first trial the arresting officer, Sergeant Meckle, had showed him a photograph of defendant, apparently to refresh his recollection about his earlier out-of-court photographic identification. However, Jaeke stated that this had had no effect on him because ''. . . I knew before.'' Jaeke also testified that Sergeant Meckle had further pointed out to him that defendant's hair style was different at the trial than at the time of the robbery. Again, Jaeke indicated that this had had no effect on him because ''. . . I could see that.''[2]

Defendant's contention must fail because he has not been able to demonstrate how the asserted ''priming'' led to an unreliable identification at the second trial. There is absolutely no indication that the related circumstances might have been factors in Jaeke's identification of defendant, either at the first or second trial. (Cf. *People* v. *Bolt,* 265 Cal.App.2d 614, 615-616 [71 Cal.Rptr. 511].) Indeed, there is quite a bit of evidence to the contrary. Jaeke identified defendant from the group of photographs within a few days of the robbery. He denied that Sergeant Meckle's re-display of a picture of defendant prior to the first trial affected his judgment at the second trial. At the second trial he unequivocally identified defendant as one of the robbers. Defense counsel made use of a lengthy cross-examination of Jaeke to try to demonstrate his lack of ability to remember or his propensity

[1]There was no evidence that Hygh was in either of the lineups. On the contrary, there is a strong inference that he was not, because he was arrested after Jaeke had picked him out of the pictures.

[2]In any case the change in hair style was extraneous information because 1) during the robbery defendant wore a hat, which completely covered his head, thereby removing hair style as an element of the identification; 2) the picture from which Jaeke made his identification showed defendant with the type of hair style he wore in court.

to testify to something which was not within his memory. It is clear that the jurors believed that Jaeke's identification was accurate. We must allow them to be the sole judges of the witness' credibility and reliability. (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42]; see also *People* v. *Sanders,* 217 Cal.App.2d 606, 610 [31 Cal.Rptr. 707].)

2. The trial judge abused his discretion in denying defense counsel permission to use a particular "test instance"[3] in the cross-examination of the witness Jaeke. We conclude he did not.

During the cross-examination of Jaeke, defense counsel attempted to utilize a "test instance," i.e., an in-court test of the witness' ability to observe and recollect a fact not material to the case being tried but illustrative of his general ability to observe and to later recall and relate his observations. Jaeke was asked by defense counsel concerning his recollection as to who were the court personnel at the first trial. At one point, when he was being asked if he would stand by his statements, after Jaeke had stated as to the present court clerk's previous presence in court, "I'm not positive, but I think so," and again, "I am quite sure about him but I am not positive," the trial judge interceded and directed defense counsel to desist from asking any more questions in this area on the ground that the criteria (i.e., the particular "test instance") desired to be used to measure the witness' ability to identify and recall was unfair and invalid. Defendant's counsel then made an offer of proof that the clerk of the first trial was a female Caucasian and that the current clerk was a male Negro. He argued that this evidence was highly probative on two defense points: 1) the inability of the witness to accurately remember the identity of a person he had seen previously; and 2) his propensity to testify with considerable assurance that he remembered a fact when the average person in a similar circumstance would admit unequivocally that he was not positive. The trial judge explained, in effect, that he was not allowing use of the proposed "test instance" on the ground that the question put to Jaeke was confusing, because there was an occasion other than the two trials on which Jaeke had been in court when the current clerk had been on duty; that the question would not fairly test Jaeke's powers to observe and remember faces.[4]

[3] See discussion, *infra*, for source of this apt terminology.

[4] His thought, no doubt, was that it would rather demonstrate Jaeke's ability, or inability, to understand to which instance defense counsel was referring.

Further, the trial judge felt that the court clerk in a trial was not someone that Jaeke. as a layman, would remember (compared with the robber in the store commiting the crime in his presence) and that this further indicated that the proposed "test instance" was inappropriate criteria to measure the witness' ability to observe and recollect.

The general rule in this area has been stated as follows: " 'The authorities all agree that wide latitude should be allowed in cross-examination for the purpose of testing accuracy or credibility,[5] especially if the witness is a reluc-- tant one or is hostile, or if he is one of the parties in interest, *or is a witness against a defendant in a criminal prosecution.* The court has, however, discretionary power over cross-examination which will be disturbed on appeal only in case of an abuse thereof. Thus the court may confine an examination within reasonable limits, and *may curtail a cross-examination which is unduly protracted, frivolous, or which relates to matters which are irrelevant, admitted or have already been fully covered.* (Emphasis added)' " (*People* v. *Whitehead,* 113 Cal.App.2d 43, 48 [247 P.2d 717], quoting 27 Cal.Jur. 96 *et seq.*)

Considering the factors involved in the instant case, we cannot say, as a matter of law, that the trial judge abused his discretion by not allowing defense counsel to ask further questions about the clerk and to prove the difference between the two clerks. "In proving the falsity of . . . a test instance erroneously recollected . . . it is . . . common to exclude *extrinsic testimony.* Nevertheless, in simple cases, where the effect might be important this ought to be admitted. There is no propriety in a hard-and-fast rule; and the trial Court should be conceded a discretion." (3 Wigmore, Evidence (3d ed. 1940) § 995, p. 638.)

3. A confession and certain following admissions made by defendant to Sergeant Meckle were erroneously admitted into evidence because defendant's right to remain silent had been abused. We hold that there was no error as to the confession and that any error as to the subsequent admissions was waived or was harmless.

---

[5]The rationale is explained by Professor Wigmore: "Repeated instances of inability to recollect give the right to doubt the correctness of an alleged recollection of a material fact; the force of the instances depending on the greater or less probability that the one thing could be forgotten while the other is remembered." (3 Wigmore, Evidence (3d ed. 1940) § 995, p. 635.)

On March 14, 1967, Sergeant Meckle and Officer Brown picked up defendant at the 77th Street police station to transport him to the Wilshire station pursuant to an arrest warrant. Sergeant Meckle advised appellant of his constitutional rights and asked him if he understood. Defendant said, "Yes." As they went out to the police vehicle, Sergeant Meckle asked him, "Do you know why you have been busted?" Defendant stated, "Yes, you've got me, and I robbed the place, and I am guilty." Sergeant Meckle asked, "What place?" Defendant replied, "The clothing store." After naming the correct store involved, defendant stated, "I don't want to tell you any details. I don't want to talk about it any more." Sergeant Meckle said, "You can't just tell me you are guilty and not tell me anything about it. I want some details." Sergeant Meckle then asked defendant if the gun he had used in the robbery was a revolver. Defendant said, "Yes" and Sergeant Meckle asked him if it was the older style which breaks in half, to which defendant replied, "Yes."

At the outset, defendant waived his right to remain silent by indicating that he understood his right and then making a practical confession in response to the question as to whether he knew why he was "busted." He withdrew his waiver and reasserted his right when he said that he did not wish to talk any more. However, both Sergeant Meckle and Officer Brown were allowed to testify to the entire conversation. No objection was made by either defense counsel as to the second portion. Even though *Miranda*[6] requires that all questioning must cease when a suspect has asserted his right to remain silent, it has uniformly been held that at a trial taking place after the rendition of *Miranda* an objection is a prerequisite to raising a violation issue on appeal. (*People* v. *Richardson*, 258 Cal.App.2d 23, 31 [65 Cal.Rptr. 487]; *People* v. *Castro*, 257 Cal.App.2d 643, 646 [65 Cal.Rptr. 62]; *People* v. *Taylor*, 253 Cal.App.2d 574, 576 [61 Cal.Rptr. 638].) In any case the intitial statements made to the police officers under defendant's valid waiver were so incriminating that we can say beyond a reasonable doubt that the subsequent admissions were harmlessly received. (*Chapman* v. *California*; 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].) 4. Finally, defendant contends that we should now declare, as a matter of law, that a confession must be set down in writing and signed

---

[6]*Miranda* v. *Arizona*, 384 U.S. 436, 444-445 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974].

by the declarant, and, further, that it is not sufficient for such a confession to be orally repeated at trial by one police officer and corroborated by another. Defendant cites no cases in support of this contention. We are unable to find any. We make no such declaration.

While the point is not raised on appeal, we feel compelled to discuss the effects on the instant case of our Supreme Court's recent decision in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225] (Crim. No. 10999, filed October 2, 1969). That case holds, inter alia, that where ''movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself'' section 209 of the Penal Code has not been violated. The holding in *People* v. *Daniels* is applicable to the case at bench.[7] Defendant Hygh was found guilty of kidnaping Jaeke for the purpose of robbing him in addition to being found guilty of the first degree robbery of Jaeke. The kidnaping conviction was based on Hygh's act of forcing Jaeke at gunpoint to move from the middle or front portion of the men's store to the rear and then to lie down on the

---

[7]The opinion of our Supreme Court in *People* v. *Daniels,* 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225], stresses that its interpretation of section 209 is what the Legislature *always* intended that it should be. In this light, what defendant Hygh did was *never* proscribed under section 209. This alteration in criminal accountability is quite a different matter than a judicial change in constitutional interpretation relating to police standards or prosecution practices and procedures (see discussion in *People* v. *Edwards,* 71 Cal.2d 1096, 1109-1110 [80 Cal.Rptr. 633, 458 P.2d 713]). Rather the issue is whether defendant can remain convicted for doing acts which at the time of his trial appeared to constitute the crime of kidnaping for the purpose of robbery (which the trial judge reduced to simple kidnaping) but which, today, while his case is still on direct review, clearly will not amount to a violation of that statutory section. We think the most recently announced judicial construction of section 209 must be applied in this case. (See, e.g., *People* v. *Villalobos,* 245 Cal.App.2d 561 [54 Cal.Rptr. 60], which applies our Supreme Court's interpretational change in *People* v. *Leal,* 64 Cal.2d 504, 511-512 [50 Cal.Rptr. 777, 413 P.2d 665] (quantum of narcotic required for possession) retroactively to a case then on appeal (so-called partial retroactivity); *People* v. *Nigri,* 232 Cal.App.2d 348 [42 Cal.Rptr. 679], which similarly followed the judicial change that was pronounced in *People* v. *Hernandez,* 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092] (age mistake in statutory rape); see also language in *People* v. *Rollins,* 65 Cal.2d 681, 687-688, and footnote 3 at page 685 [56 Cal.Rptr. 293, 423 P.2d 221], which seems to be applicable to the instant situation, namely, ''even a non-retroactive judicial decision governs all cases which were not yet final when the decision was announced.'' (P. 688).) Because the posture of the instant case does not require it, we do not concern ourselves with the question of whether the *Daniels* interpretation should be applied to cases in which judgment has already become final (so-called full retroactivity).

floor. This asportation element was "merely incidental to" the robbery and did not "substantially increase" the potential for harm to Jaeke beyond that already created by the robbery itself. The trial judge reduced the crime to a violation of section 207 of the Penal Code (simple kidnaping) obviously to avoid the harsher penalty provisions of section 209. Since there could have been no verdict of guilty of violation of Penal Code section 209, there could have been nothing to reduce to Penal Code section 207.

The holding in *People* v. *Daniels* requires a reversal of the kidnaping conviction. In all other respects the judgment is affirmed. The purported appeal from the denial of defendant's motion for new trial is dismissed.

Stephens, Acting P. J., and Chantry, J. pro tem.,* concurred.

A petition for a rehearing was denied on November 6, 1969, and the opinion was modified to read as printed above. Respondent's petition for a hearing by Supreme Court was denied December 3, 1969.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.