[Crim. No. 3551.  Fourth Dist., Div. One.  Dec. 4, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS RAMIREZ, Defendant and Appellant.

## COUNSEL

Joseph L. Gimbrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert J. Polis, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Defendant appeals from a judgment imposing sentence following verdicts finding him guilty of kidnaping, assault with intent to commit rape and attempted rape.

### Contentions on Appeal

Defendant's contention may be summarized as follows: The evidence is insufficient to support any of the verdicts.

Assault with intent to commit rape includes the offense of attempted rape, so that the conviction of the latter may not stand.

In a supplemental brief filed in propria persona, defendant inferentially argues the inadequacy of trial counsel.

In that brief he urges that the sentences imposed on counts III and IV may not stand, even though execution of the sentences has been stayed. We give hereafter our reasons for holding the sentence on count IV may not stand. However, the objection made by defendant has been considered in *People* v. *Johnson,* 242 Cal.App.2d 870, 876-877 [52 Cal.Rptr. 38], and *People* v. *Niles,* 227 Cal.App.2d 749, 755 [39 Cal.Rptr. 11], and in those cases the method used by the trial court was held to be permissible.

### Sufficiency of the Evidence

■ The evidence in support of the verdicts is sufficient.

At about 2:30 a.m., Thelma D., the victim, drove her car from her home in Midway City to the adjacent community of Garden Grove to the grounds of a plant known as Air Industries to bring home her brother, an employee of Air Industries, who was to finish his shift at 3 a.m.

As she traveled toward Air Industries, she noticed a brown Rambler two-door automobile seemed to be following her car. Having passed through the gate at Air Industries, she parked her car with its rear to the wall after she noticed that the brown Rambler also entered the gate and stopped with its front toward the wall, with its driver's side nearer her car. A man later identified as Laurent alighted from the driver's side of the Rambler and came alongside her car and inquired the time; she told him "25 minutes till 3:00." He then opened the door and started to pull her out; when she started to scream he said shut up or he would kill her with a knife he had in his pocket.

Laurent succeeded in pulling her out, but while he was doing so she bit his finger, managed to break away, ran a short distance toward a guard house and yelled, "Please help me." Laurent overtook her and brought her to the side of the Rambler.

Defendant had been in the front seat of the Rambler on the passenger side, and had been shouting directions to Laurent, including one to "choke her." Between the two of them they pushed and pulled Thelma into the Rambler and threw her over the front seat onto the floor in back.

While Laurent got in and drove the car away, defendant crawled over the back of the front seat onto Thelma. Laurent told defendant that he wanted to be first, but defendant said, "Wait, wait" and proceeded in no uncertain manner to demonstrate his intention to effectuate an act of sexual intercourse.

Meanwhile, a guard at Air Industries had noticed the scuffling and had heard a scream from one of the struggling figures but did nothing about it. However, Adair, a Garden Grove policeman, passing the open gate at 2:47 a.m., noticed the lights shining from Thelma's parked car and entered to investigate. He saw a shoe on the ground that Thelma had lost in the attempt to free herself, found that all doors of the four-door car were locked except that next to the steering wheel and that there was a women's open purse on the seat. There were also some white pills scattered on the ground that had been lost by Laurent and which proved to be amphetamine tablets.

Adair obtained from the guard an account of what the latter had seen and heard, including a description of the Rambler and the direction in which it had gone. He had that information put out on the police radio at 2:50 a.m. Officer Davis was one of those who received the message. He sighted and pursued the Rambler which took an erratic course as soon as Laurent and defendant became aware of the nearness of the police; and defendant then desisted from his apparent intention to effectuate an act of sexual intercourse.

After the police car had sounded its siren, defendant tried to help Thelma put on her pants and brassiere, but held her head. She asked that he please stop the car, saying there was going to be an accident and she would be killed. Laurent started going slower as if to stop, and was told by defendant to keep going, upon which Laurent started going rapidly.

Officer Davis, when another police car was near him, brought his car in front of the Rambler, forcing it to stop. After stopping, Laurent swung suddenly around in a U-turn and sped off, but followed by police. Finally the Rambler overturned and Laurent received fatal injuries.

In oral argument, defense counsel asserted it would have been physically impossible for defendant to have effectuated an act of sexual intercourse under the circumstances. That is a gratuitous assertion.

Defendant as a witness admitted he intended to have sexual intercourse with Thelma but that as she lay on the car floor she had said she knew what he wanted and that it was "okay." He said also that he had been drinking and had had a large number of benzedrine pills earlier.

Thelma had been asked about pills in her purse which she said were vitamin pills for her children. Defendant, in the *pro se* brief, suggests that cross-examination of Thelma might have shown that the amphetamine pills also were hers and that she was addicted to the use of amphetamine. That argument may have postulated that Thelma's account of her experience was, in effect, the result of a pipe dream. Such testimony would have been immaterial. (*People* v. *Pargo,* 241 Cal.App.2d 594, 600 [50 Cal.Rptr. 719].) Nothing in the evidence suggests that such a line of inquiry could have been profitably pursued. Trial counsel was not at fault in not dreaming up the desirability of such an exploration.

Defendant attacks the sufficiency of the evidence to support the conviction of kidnaping because of claimed inconsistencies in the testimony of Thelma and because of the conflicts between her testimony and his own. All those matters were resolved by the triers of fact. *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], cited by defendant, has no application to the present situation. Thelma did not at any time deny the

essence of her claim that she was seized and abducted by force and subjected to a forcible preliminary to an act of sexual intercourse, thwarted only by the intervention of the police.

The alleged inconsistencies in the testimony of Thelma must be considered trivial in view of the corroborative evidence as to the use of force and her lack of consent. (Cf. *People* v. *Kimball*, 122 Cal.App.2d 211 [264 P.2d 582].)

## The Multiple Convictions

■ Having been convicted of assault with intent to commit rape, defendant could not legally be punished for that crime and for attempted rape based upon the same facts.

In the case at bench, defendant was sentenced to prison for the term provided by law; the judgment then provided: "It is ordered that sentences shall be served in respect to one another as follows, the execution of sentence is suspended on counts three (3) and four (4) pending any appeal or any sentence imposed by the Adult Authority and then to become permanent."

Count III charged assault with intent to commit rape; count IV, attempted rape by force and violence.

The Attorney General does not concede that an attempt to rape by force and violence is a necessarily included offense in assault with intent to commit rape, but does concede that defendant here might not be punished for both convictions.

An attempt to determine whether one of the offenses is a necessarily included offense in the other might seem to be an exercise in logomachy. ■ However, there is a distinction in the relationship between two different statutory definitions of crimes which may be applicable to the same act, and which provide for different punishments, and that between a necessarily included crime and the crime within which it is included.

■ If a single accusatory pleading were to charge both the greater crime and, in a separate count, the necessarily included offense, the latter would be a superfluity. A conviction of both would not stand. "The authorities have set down certain rules or tests whereby it may generally be determined whether one or more offenses result from a single act or transaction. Frequently, the test is stated to be 'the *identity of the offenses* as distinguished from the identity of the transactions from which they arise. A defendant may be convicted of two separate offenses arising out of the same transaction when each offense is stated in a separate count and when the two offenses differ in their necessary elements and one is not included

*within the other.'*" (*People* v. *Craig,* 17 Cal.2d 453, 457 [110 P.2d 403].)

However, when a person is charged and convicted of two separately defined crimes based upon the same act but neither of which crime is necessarily included in the other, the convictions may stand, although there may be only one punishment.

Defendant cites *People* v. *Rupp,* 41 Cal.2d 371 [260 P.2d 1], as authority for the proposition that an assault with intent to commit rape necessarily includes attempt to commit rape.

*People* v. *Rupp, supra,* does, indeed, contain this language, on page 382: "[A]n assault with intent to commit rape is merely an aggravated form of an attempted rape, the latter differing from the former only in that an assault need not be shown. (*People* v. *Welsh,* 7 Cal.2d 209, 213 [60 P.2d 124].) 'An "assault" with intent to commit a crime necessarily embraces an "attempt" to commit said crime but said "attempt" does not necessarily include an "assault." ' (*People* v. *Akens,* 25 Cal.App. 373, 374 [143 P.2d 795])."

In citing *People* v. *Akens,* 25 Cal.App. 373, 374 [143 P.2d 795], the court, in *Rupp,* selected a decision that was counter to a prior decision of the Supreme Court. In *People* v. *Akens, supra,* the Court of Appeal reversed a conviction of assault with intent to commit rape because the information charged a rape upon a minor without alleging the use of force and violence, reasoning that assault was not included in a rape upon a minor unless it were forcible rape. In so ruling, the Court of Appeal made no reference to *People* v. *Babcock,* 160 Cal. 537 [117 P. 549], in which the Supreme Court three years earlier had held the exact opposite.

In *People* v. *Rupp, supra,* 41 Cal.2d 371, the defendant had contended that the homicide committed by him was shown to have been done in an assault with intent to commit rape and not in an attempt to commit rape. The court in its discussion pointed out that was an attempted disinction without a difference, using the heretofore quoted language. Section 189, Penal Code, states that murder "committed in the perpetration of, or attempt to perpetuate . . . rape" is murder of the first degree.

Clearly, it was not necessary to the decision in *People* v. *Rupp* that an attempt at rape be a necessarily included offense in an assault to commit rape. The same result could have been reached by saying that an assault with intent to commit rape is an attempt to commit rape with force and violence, or to commit rape upon a minor as the 15-year-old girl whose death was caused by Rupp.

Finally, the Supreme Court, after using the quoted language, continued

in *Rupp*: "The evidence in the record reasonably shows the commission of no crime other than a killing in an attempt to perpetrate rape." (*People* v. *Rupp*, 41 Cal.2d 371, 382 [260 P.2d 1].)

Since no reference was made by the Supreme Court to *People* v. *Babcock, supra,* 160 Cal. 537, it is unlikely that in *Rupp* it was intended to overrule the holding in *Babcock.*

█ It is clear that any rape commited by force and violence necessarily includes the crime of assault with intent to commit rape (*People* v. *Brown,* 87 Cal.App.2d 281 [196 P.2d 936]); and that an attempt to commit rape is necessarily included in every rape (*People* v. *Horn,* 25 Cal.App. 583, 592 [144 P. 641]).

█ In view of the holding in *People* v. *Babcock, supra,* 160 Cal. 537, it may be said that any rape of a person legally incapable of giving consent, and any rape by fraudulent means, or in which the will to resist is overcome by drugs, necessarily involves an assault.

A rape accomplished by threats of great and immediate bodily harm also must involve an assault.

Only those attempts at rape would not involve an assault that are balked by exterior interference and in which the overt act involves no physical contact.

Can it be said that while an assault is an invariable ingredient in an accomplished rape, a frustrated attempt at rape is a necessarily included offense in every assault with intent to commit rape? A result of such a rule would be that a defendant charged only with an assault with intent to commit rape might under a charge be found guilty of attempted rape. (*People* v. *Greer,* 30 Cal.2d 589, 598 [184 P.2d 512].)

A concomitant would be that a conviction of an attempted rape under an information charging an assault would be deemed an acquittal of the larger crime. (*People* v. *Greer, supra,* 30 Cal.2d 589, 598; *Gomez* v. *Superior Court,* 50 Cal.2d 640, 652 [328 P.2d 976].) But it is inconceivable that one found guilty of an attempted rape by force and violence could at the same time be found not guilty of assault with intent to commit rape.

The Supreme Court, in *People* v. *Lee Kong,* 95 Cal. 666 [30 P. 800, 29 Am.St.Rep. 165, 17 L.R.A. 626], said: "It is not the purpose of the court to draw nice distinctions between an attempt to commit an offense and an assault with intent to commit the offense, for such distinctions could only have the effect to favor the escape of criminals from their just deservings. And in view of the fact that all assaults to commit felonies can be

prosecuted as attempts, we can see no object in carrying the discussion of the subject to any greater lengths." (Pp. 669-670.)

To us it seems logical to say that where an assault is involved in an attempted rape, the act is one made subject to different punishment by two different code sections.

An attempt to commit rape by force and violence and an assault with intent to commit rape against the same victim and at the same time are but two different ways of describing the same criminal act.

The attempted rape by force and violence is made punishable by imprisonment for not more than 20 years by virtue of paragraph 1 of section 664, Penal Code, since rape is punishable by life imprisonment (Pen. Code, §§.264 and 671).

Assault with intent to commit rape is punishable by imprisonment for not less than one year and not more than 20 years. Since section 220 fixes a minimum that is not found in the possible punishment of the attempt, it must be deemed the more severe punishment.

The Adult Authority, in dealing with defendant, should not consider the conviction of attempted rape with force and violence as a conviction additional to that of the assault.

### Effect of People v. Daniels

We have reviewed the evidence to determine whether the holding in *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225] compels a reversal of the kidnaping conviction, as urged at the time of oral argument.

We do not take the view that the Supreme Court in *Daniels* adopted the rule of the New York Court of Appeals expressed in *People* v. *Levy,* 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842]; *People* v. *Lombardi,* 20 N.Y.2d 266 [282 N.Y.S.2d 519, 229 N.E.2d 206]. Rather, it appears to us that the court favored the definition of section 212.1 of the Model Penal Code, as follows: " 'A person is guilty of kidnaping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation,' for the purpose, inter alia, of terrorizing or holding the victim for ransom, or of facilitating the commission of a felony."

In discussing section 209, Penal Code, dealing with kidnaping for ransom or for the purpose of robbery, the court, in *Daniels,* had this to say:

"[T]he intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies (e.g. *People* v. *Knowles* (1950) *supra,* 35 Cal.2d 175 [217 P.2d 1]) but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself."

In *People* v. *Daniels, supra,* 71 Cal.2d 1119, the court declares the proper interpretation of section 209 to be that the asportation may not be merely that incident to the commission of the crime in furtherance of which the alleged kidnaping is committed. What is said there in that respect with regard to section 209 is true also of the interpretation of section 207, as had been recognized in *Cotton* v. *Superior Court,* 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241].

Section 207, Penal Code, is as follows: "Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county . . . is guilty of kidnaping."

The decision in *People* v. *Daniels* is to be given application to any case in which the judgment is not yet final. (*In re Jackson,* 61 Cal.2d 500 [39 Cal.Rptr. 220, 393 P.2d 420]; *People* v. *Hines,* 61 Cal.2d 164 [37 Cal. Rptr. 622, 390 P.2d 398]; applying the rule of *People* v. *Morse,* 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].)

The holding in *Daniels* was given application in *People* v. *Ross,* 276 Cal.App.2d 729, 736 [81 Cal.Rptr. 296], where a conviction of kidnaping incident to a robbery was reversed because the victim was moved only within the enclosed premises where the robbery occurred.

Under *Daniels,* it could only be said that the defendants, upon the record in that case, could not as a matter of law be convicted of violations of section 209, Penal Code.

Similarly, in *People* v. *Ross, supra,* 276 Cal.App.2d 729, the court could say as a matter of law that the defendant could not be convicted of a violation of section 209. So also in *Cotton* v. *Superior Court, supra,* 56 Cal.2d 459, referred to in *Daniels,* the court could say as a matter of law that that asportation was merely incidental to another crime.

While there are such cases in which it may be said as a matter of law that

a conviction of kidnaping should not stand, there are other cases in which there is an area calling for a factual determination.

In the case at bench, the evidence would support a finding that the victim was carried a substantial distance from the place where she was forced into the car. Here, detention was continued beyond the point at which defendant, because of the presence of the police, abandoned his attempt at rape. At that point the victim's request that the car be stopped was refused. Not only was she detained, but again she was carried a substantial distance and away from those who would have freed her from detention; the manner of the detention and movement substantially increased the risk of harm to her over and above that necessarily incident to the crime of rape—the risk being so great that the driver of the car met his death as a result.

We cannot say as a matter of law that the victim in the present case was not removed a substantial distance, nor can we say that the risk of bodily harm was not substantially greater than that necessarily involved in the commission of rape by force and violence, and that the detention was limited to that incident to the attempted rape. We hold the evidence sufficient to support contrary findings.

The issue in the case at bench was not presented to the jury under the rules laid down in *Daniels*. Rather, the jury was instructed as follows: "To constitute the crime of kidnaping, as charged in Count I of the Information, there must be a carrying, or otherwise forcibly moving, for some distance of the person who, against his will, is stolen or taken into the custody or control of another person, but the law does not require that the one thus stolen or taken be carried or moved a long distance or any particular distance."

Under such an instruction, it is possible a jury might find a defendant guilty of a violation of section 207 whose victim had not been moved or carried a substantial distance.

The jury was earlier instructed in the language of section 207 as follows: "Every person who unlawfully and forcibly steals, takes, or arrests any other person in this state, and carries him into another country, state or county, or into another part of the same county, doing so against the will and without the consent of the person so carried, is guilty of kidnaping."

Under that instruction, too, it is possible a defendant might be found guilty of violating section 207 although the victim had not been moved a substantial distance, and although the moving might have been only incidental to the commission of another crime.

The implementation in future trials of the decision in *People* v. *Daniels*

would require a determination by the trial judge whether the moving of the victim was for a substantial distance and whether it was merely incidental to the commission of another crime without substantially increasing the risk of physical harm necessarily involved in the commission of that crime. If his determination should be in the affirmative on the first question and in the negative on the other, the jury would then have to be instructed in accordance with the *Daniels* decision.

The question arises, therefore, whether the cause should be reversed as to the kidnaping judgment and remanded for retrial on that charge under instructions that the jury find whether the victim had been removed a substantial distance from the place where she was seized, whether the removal and detention of the victim were merely incidental to the crime of attempted rape, and whether there had been a risk of bodily harm substantially greater than that necessarily involved in a rape by force and violence.

The question of law involved is not as to any guaranty under the federal Constitution.

Literally speaking, the instructions given were not a distortion of the language of section 207.

■ Therefore, since the presumed error was in the instructions to the jury, the test to be applied is that of article VI, section 13 of our Constitution, that is, whether there has been a miscarriage of justice. "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

■ We are of opinion that it is reasonably probable that a result more favorable to defendant would not have been reached in the absence of the error.

The judgment is affirmed, except as to the judgment imposing sentence on the charge of attempted rape which is ordered vacated.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied December 22, 1969, and appellant's petition for a hearing by the Supreme Court was denied February 18, 1970.