[Crim. No. 11784. Second Dist., Div. Two. Apr. 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH COR-
REIA MARTIN, Defendant and Appellant.

Colin W. Graves, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—On June 21, 1965, Joseph Correia Martin was charged by amended information with two counts of robbery, in violation of Penal Code, section 211 and four counts of kidnaping for the purpose of robbery, in violation of Penal Code, section 209. The information also alleged 11 prior felony convictions for breaking and entering, larceny, robbery

and burglary, forgery, and fraudulent possession of checks (violation of Pen. Code, § 475a).

Martin pleaded not guilty and admitted his priors. The jury found him guilty as charged, fixed the two robbery counts as first degree, and found that he was armed at the time of the commission of the offenses. The court found Martin not to be an habitual criminal within the meaning of Penal Code, section 644, subdivision (a), found three priors to be inapplicable because of Martin's youth at time of conviction, and sentenced him to state prison on the two robbery counts, sentences on the other counts to run concurrently with stays of execution granted in accordance with the rules set forth in *People* v. *Niles,* 227 Cal.App.2d 749, 755 [39 Cal. Rptr. 11].

At approximately midnight on February 28, 1965, Martin entered the Shrimp House, a cafe in Rosemead, and ordered and paid for a cup of coffee. About 10 minutes later, he asked the waitress, Mrs. Owens, for change for a quarter. Mrs. Owens opened the cash register. Martin then drew a .45 automatic pistol, told her it was a stick-up, and ordered her to give him all the bills and half-dollars (approximately $420) in the register. He put the money in his pockets. At gun point, he led Mrs. Owens and the cook and dishwasher who were behind the counter in the kitchen, into a storeroom about 30 feet away, instructing them to stay put or he would kill them.

On March 3, 1965, approximately 3:40 a.m., Martin walked into a Texaco service station on Rosemead Boulevard, told the attendant his car had run out of gas and bought 50 cents worth of fuel pumped into a can loaned by the station. He left, and returned about 10 minutes later, stating he could not get his car started. Martin went to the "island" where the pumps and cash drawer were located and began to wipe his hands. He asked for change to make a phone call, took out his wallet, and then said he had lost a $20 bill. The attendant began to look for the bill near the "island" where Martin had been wiping his hands. Martin pulled a .45 automatic pistol and ordered the attendant to open the cash drawer or he would "blow [his] brains out." Martin took approximately $40 from the drawer. He then led the attendant at gun point to an office about 30-35 yards away in the rear of the station. He took the victim's wallet, containing a few dollars, and ordered him to stay in the room for 15 minutes.

Mrs. Owens, the cook, and the gas station attendant each

identified Martin in court. Each had also previously picked him out of a police lineup (the dishwasher had left the country and did not testify at trial). The lineup was composed of five Caucasian men. Martin is Caucasian but described as ''dark complected.'' The witnesses testified his most identifying features were ''his eyes'' and the ''expression on his face.''

Martin testified, with corroboration, than on the night of the cafe robbery he was in a pizza tavern in Rosemead from 8:30 p.m. to 1 a.m., and that on the night of the Texaco station holdup, he was asleep at a motel in Torrance. The prosecution impeached Martin's testimony by introduction of his 11 prior felonies.

Court-appointed counsel on behalf of Martin on appeal contends that introduction of Martin's prior convictions so prejudiced the jury that he was denied a fair trial; that the lineup was ''stacked'' against him; and that he was entitled to counsel at the time of the lineup. Martin, in pro. per. in two supplemental briefs, further contends that consolidation of the two robberies into one trial violated Penal Code, section 954; it was error ''to charge'' violation of Penal Code, section 209; and the evidence is insufficient to support the guilty verdicts.

Section 2051 of the Code of Civil Procedure provides for impeachment of a witness by proof of his prior conviction of a felony. A defendant can, by admitting his priors and not testifying in his own behalf, avoid having information as to his prior convictions placed before the jury. If a defendant chooses to be a witness at his trial, however, he is subject to impeachment by proof of prior felony convictions as is any other witness. (*People* v. *Cobb,* 45 Cal.2d 158, 162-163 [287 P.2d 752]; *People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811].)

While the rule of evidence allowing impeachment of a witness by proof of prior felony convictions has been criticized, and suggestion has been made that such impeachment be limited to crimes bearing on a witness' dishonesty (see, *e.g.* Gustafson, *''Have We Created a Paradise for Criminals?''* 30 So.Cal.L.Rev. 1, 19-20; Holbrook, *''Witnesses,''* 2 U.C.L.A. L.Rev. 32, 40), the new Evidence Code, section 788, makes no change in respect of impeachment by proof of past felony conviction. In the instant case, furthermore, the crimes of which Martin had previously been convicted are ones generally considered to have bearing on ''dishonesty,'' although

such classification of crimes is admittedly difficult. (See Witkin, Cal. Evidence (2d ed. 1966) p. 1146.)

Martin complains that the sheer number of prior convictions put before the jury was prejudicial to his cause. There is nothing, however, which prohibits a prosecutor from showing, if done in good faith (*People* v. *Perez,* 58 Cal.2d 229, 238-239 [23 Cal.Rptr. 569, 373 P.2d 617]), any and all felony convictions which a defendant-witness has suffered. Both the trial court and Martin's counsel were concerned with the possible adverse effect if appellant took the stand and was impeached by his priors. Martin and his attorney concluded, however, that his only defense—that of alibi—necessitated the risk. The prosecutor asked straight-forward impeaching questions giving only the crime, date, and place of conviction. To each question, Martin answered simply ''Yes, sir,'' he had been so convicted. The impeachment procedure was proper in all respects.

Martin contends that the police lineup was ''stacked'' because of the five men, he was the only one with dark skin. Martin was identified at trial by the three witnesses of the crimes. All testified they recognized him in the lineup for reasons other than and in addition to his coloring. As was pointed out in *People* v. *Parham,* 60 Cal.2d 378, 380 [33 Cal. Rptr. 497, 384 P.2d 1001], where defendant complained that at his lineup, each of the five men in turn tried on his hat and coat and they did not fit any but defendant, ''The manner in which the lineup was conducted affects only the weight of the witnesses' testimony, not its admissibility. . . . It was the jury's function to consider the circumstances of the lineup in weighing the witnesses' testimony. The jury's implied finding that identity was established is supported by the evidence.''

Martin contends he was entitled to counsel at the lineup because the accusatory stage had been reached. (*Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758].) This contention was expressly rejected by our supreme court in *People* v. *Lopez,* 60 Cal.2d 223, 241-244 [32 Cal.Rptr. 424, 384 P.2d 16] and emphasized in *People* v. *Gilbert,* 63 Cal.2d 690, 708-709 [47 Cal.Rptr. 909, 408 P.2d 365]. Although the United States Supreme Court has granted certiorari in *Gilbert,* the law in California at this time is as enunciated in *Lopez* and *Gilbert.* (See *People* v. *Juarez,* 243 Cal.App.2d 475, 480-481 [52 Cal.Rptr. 556].)

Martin contends the consolidation for trial of the separate robberies of cafe and service station violated Penal

268

Code, section 954 and deprived him of a fair trial. Section 954 allows a defendant to be charged with two or more different offenses "connected together in their commission, or . . . of the same class of crimes or offenses, under separate counts. . . ." The trial court is given discretion, "in the interests of justice and for good cause shown," to order separate trials. Section 1004, subdivision 3, of the Penal Code, provides that a defendant may demur to an accusatory pleading before entry of plea when it appears "That more than one offense is charged, except as provided in Section 954."

Had Martin felt the trial of the two robbery-kidnaps should, in the interests of justice, have been severed, it was incumbent upon him to demur or move for a severance. (Pen. Code, § 1012.) Failure to do so has been repeatedly held to waive objection to consolidation and prevent raising objection on appeal. (*People* v. *Kemp,* 55 Cal.2d 458, 474 [11 Cal. Rptr. 361, 359 P.2d 913]; *People v. Stone,* 199 Cal. 610, 624 [250 P. 659]; *People* v. *Zurica,* 225 Cal.App.2d 25, 31 [37 Cal.Rptr. 118].) Even had objection been made, the trial court would have been justified in its discretion to deny severance. In *People* v. *Chessman,* 52 Cal.2d 467, 492 [341 P.2d 679], it is stated, and is reiterated in *People* v. *Kemp, supra,* at page 475, that it is not necessary that the offenses joined relate to the same transaction or be at the same time and place, or be against the same victims if " '. . . there is a common element of substantial importance in their commission.' "

In the intant case, not only was appellant charged with the same offenses arising out of the two crimes, but the same modus operandi and gun were present in both robberies. Joinder under these circumstances is proper. (See *People* v. *Pike,* 58 Cal.2d 70, 84 [22 Cal.Rptr. 664, 372 P.2d 656]; *People* v. *Scott,* 24 Cal.2d 774, 778-799 [151 P.2d 517]; *People* v. *Walker,* 112 Cal.App.2d 462, 471 [246 P.2d 1009].)

 Martin's contention that it was error "to charge" kidnap to commit robbery (Pen. Code, § 209) because the only "intent" established was to rob is without merit. The crime of kidnap is committed by the forcible removal of the victim from one place to another; the distance moved is not too critical. (*People* v. *Wein,* 50 Cal.2d 383, 399-400 [326 P.2d 457]; *People* v. *Morrison,* 228 Cal.App.2d 707, 711 [39 Cal.Rptr. 874].) Where, as here, kidnaping occurs *after* the actual perpetration of a robbery "such kidnaping may be kidnaping for the purpose of robbery if it may reasonably be inferred that

the transportation of the victim was to effect the escape of the robber or to remove the victim to another place where he might less easily sound an alarm. (*People* v. *Kristy,* 4 Cal.2d 504, 507-508 [50 P.2d 798]; *People* v. *Randazzo,* 132 Cal. App.2d 20, 23-24 [281 P.2d 289].)'' (*People* v. *Monk,* 56 Cal.2d 288, 295 [14 Cal.Rptr. 633, 363 P.2d 865].)

▮ The evidence adduced at trial was more than legally sufficient to sustain the jury's verdicts. (See *People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Martin was positively identified by three of the victims, and their accounts of the events on the evenings in question show that he committed robbery and kidnap for purpose of robbery.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.