[Crim. No. 14182. In Bank. Mar. 24, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD H. MUTCH, Defendant and Appellant.

## COUNSEL

Paul M. Posner, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—The principal question presented in this proceeding is whether a defendant whose conviction of the crime of kidnaping for the purpose of robbery in violation of Penal Code section 209 became final before our decision in *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], is entitled to post-conviction relief upon a showing that his conduct was not prohibited by the statute as we construed it in *Daniels*.[1]

In 1966 defendant was convicted on two counts of kidnaping for the purpose of robbery (counts I and II) and two counts of robbery (counts III and IV). The jury found that the victims suffered bodily harm in the course of the kidnapings, and that the robberies were of the first degree. The court granted a "motion for finding that injury to victim [on each kidnaping count] was insufficient," and sentenced defendant to life imprisonment with possibility of parole on the kidnaping counts and to the terms prescribed by law on the robbery counts, the sentences to run concurrently with each other and with sentences in two other cases. The court further ordered that the sentences on the robbery counts be stayed pending appeal and until service of the kidnaping sentences, the stays then to become permanent.

Defendant appealed, and the judgment was affirmed by the Court of Appeal in an unpublished opinion in 1967. We denied a hearing, and in 1968 the United States Supreme Court denied certiorari.

---

[1]Since the issue was not relevant there, we left this question unanswered in *Daniels*. (*Id.* at p. 1140, fn. 14.)

On October 2, 1969, we filed our decision in *People* v. *Daniels, supra,* 71 Cal.2d 1119. On October 22 defendant petitioned the Court of Appeal for a recall of the remittitur or "other appropriate relief," summarizing the facts of the case and contending he was entitled to a redetermination of his appeal in the light of *Daniels.* The request was denied without opinion, and we granted a petition for hearing and transferred the application to this court.

For almost two decades prior to 1951, Penal Code section 209 defined aggravated kidnaping to include the act of every person who "holds or detains" another "to commit . . . robbery." Under its terms, a robber could be convicted of such "kidnaping" even though he did no more than hold his victim at gunpoint or compel him to make brief movements incidental to the commission of the robbery. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 179-186 [217 P.2d 1].) In 1951 the Legislature amended section 209 by deleting the reference to detention for the purpose of robbery, substituting instead language which makes punishable every person who "kidnaps or carries away" another to commit robbery. In *People* v. *Chessman* (1951) 38 Cal.2d 166, 192 [238 P.2d 1001], however, the court construed the words "kidnaps or carries away" to mean the act of forcibly moving the victim any distance whatever, no matter how short or for what purpose, declaring that "It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state." The *Chessman* construction was applied by this court in *People* v. *Wein* (1958) 50 Cal.2d 383, 399-400 [326 P.2d 457], *People* v. *Monk* (1961) 56 Cal.2d 288, 295 [14 Cal.Rptr. 633, 363 P.2d 865], and *People* v. *Lara* (1967) 67 Cal.2d 365, 395 [62 Cal.Rptr. 586, 432 P.2d 202].

Troubled by a growing disparity between the *Chessman* reading of section 209 and a "current of common sense in the construction and application of statutes defining the crime of kidnaping" (71 Cal.2d at p. 1127), we undertook in *Daniels* to determine the intent of the Legislature when it adopted the 1951 amendment to the statute. We began by characterizing the issue before us as "whether the acts of defendants Daniels and Simmons, on the record in this case, constitute the kind of conduct proscribed by section 209." (*Id.* at p. 1126.) We turned for guidance to decisions of this court which have construed closely related statutory language. In *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459, 465 [15 Cal.Rptr. 65, 364 P.2d 241], we held that brief movements "incidental to" an assault or riot do not amount to the asportation necessary to support a kidnaping conviction; in *Daniels* we concluded by the same token that " 'the Legislature *could not reasonably have intended* that such incidental movement be a taking ". . . from one part of the county to another." ' " (Italics added; fn. omitted.)

(71 Cal.2d at p. 1131.)[2] And in *People* v. *Jackson* (1955) 44 Cal.2d 511, 517 [282 P.2d 898], we held that minor injuries to the victims "incidental to" forcible kidnaping are "not of the nature contemplated by the Legislature" in prescribing the bodily harm element of the crime; we concluded likewise in *Daniels* that the incidental movements there shown "are not of *the scope intended by the Legislature* in prescribing the asportation element of the same crime." (Italics added; fn. omitted.) (71 Cal.2d at p. 1134.)

Finally, we reviewed various authorities from our sister jurisdictions, and held that "the rule of construction declared in *People* v. *Chessman* (1951) *supra*, 38 Cal.2d 166, 192, i.e., that 'It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state,' is no longer to be followed. Rather, we hold that *the intent of the Legislature in amending Penal Code section 209 in 1951* was to exclude from its reach not only 'standstill' robberies (e.g., *People* v. *Knowles* (1950) *supra,* 35 Cal.2d 175) but also those in which the movements of the victim are merely incidental *to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself.*" (Italics added.) (*Id.* at p. 1139.)

The emphasized language makes it clear that the purpose of our decision in *Daniels* was not to "redefine" the crime of kidnaping to commit robbery—under our tripartite system of government, that power is vested exclusively in the legislative branch—but simply to declare what the intent of the Legislature has been in this regard since the enactment of the 1951 amendment to section 209. Two important consequences flow from this circumstance. First, we need not embroil ourselves in the ancient dialectic between protagonists of the "Blackstonian" and the "Austinian" theories on the effect of a judicial decision which overrules another. (See, e.g., *Linkletter* v. *Walker* (1965) 381 U.S. 618, 622-625 [14 L.Ed.2d 601, 604-605, 85 S.Ct. 1731].) In *Daniels* we did not overturn a judge-made rule of common law; rather, we recognized a statutory rule which the Legislature adopted in 1951 but to which courts had not previously given appropriate effect.

Secondly, and by the same token, we need not undertake the often perilous task of applying to the facts of this case the test of "retroactivity" developed in a well-known series of decisions of the United States Supreme Court. In those cases the high court was primarily concerned with such matters as the control of improper police practices (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *Johnson* v. *New Jersey*

---

[2]With commendable foresight, appellate counsel in the case at bar urged this same analogy in his briefs filed in the Court of Appeal in 1967.

(1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]), the exclusion of tainted evidence (*Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030]; *Linkletter* v. *Walker, supra,* 381 U.S. 618), and the reform of procedural rules affecting the reliability of the fact-finding process (e.g., *Berger* v. *California* (1969) 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540]; *Roberts* v. *Russell* (1968) 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921]; *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770]; *Tehan* v. *Shott* (1966) 382 U.S. 406 [15 L.Ed.2d 453, 86 S.Ct. 459]). By contrast, our decision in *Daniels* did not change any such evidentiary or procedural rules, less still penalize improper police practices; instead, it confirmed a substantive definition of crime duly promulgated by the Legislature. Moreover, in each of the just-cited cases the error reached constitutional proportions; in *Daniels,* however, we reversed the defendants' kidnaping convictions under Penal Code section 209 on the ground that when the statute is properly construed the evidence there introduced was insufficient to support the judgments.[3]

Here, as in *Daniels,* the issue is "whether the acts of [defendant], on the record in this case, constitute the kind of conduct proscribed by section 209." From the foregoing analysis we conclude that a robber who suffered a post-1951 conviction of violating section 209 because he compelled his victim to perform movements which were "merely incidental to the commission of the robbery and [did] not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself," was convicted under a statute which did not prohibit his acts at the time he committed them. As the Court of Appeal correctly reasoned in a decision rendered shortly after *Daniels,* "There, the Supreme Court stresses that its interpretation of section 209 is what the Legislature always

---

[3]For these reasons, *People* v. *Pelio* (1965) 24 App.Div.2d 500 [261 N.Y.S.2d 433], and *Warring* v. *Colpoys* (1941) 122 F.2d 642 [74 App.D.C. 303, 136 A.L.R. 1025], are irrelevant to our present inquiry. Moreover, in *Pelio* the New York intermediate appellate court *held* that the defendant's kidnaping conviction was sustainable even under the statutory construction expounded in *People* v. *Levy* (1965) 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842]; in dictum the court stated that *Levy* "has no retroactive effect," but gave as its reason only that "there has been no pronouncement [i.e., by the New York Court of Appeal] that the new rule should apply to cases no longer in the appellate process" (261 N.Y.S.2d at p. 434). *Warring* is distinguishable on a number of grounds (see, e.g., *In re Jackson* (1964) 61 Cal.2d 500, 507, fn. 5 [39 Cal.Rptr. 220, 393 P.2d 420]), and appears in any event to be an aberration in the law; it has been strongly criticized (Hart & Sacks, The Legal Process (Harv.L.Sch. tent. ed., unpub., 1958), pp. 631-635 [characterizing *Warring* as "utter . . . and mischievous nonsense"]; Currier, *Time and Change in Judge-Made Law: Prospective Overruling* (1965) 51 Va.L.Rev. 201, 258; Note, 60 Harv.L.Rev. 437, 447; but see 27 Iowa L.Rev. 315), and would probably not be followed today (see *United States* v. *Kennedy* (2d Cir. 1946) 157 F.2d 811, revd. on other grounds in *Sunal* v. *Large* (1947) 332 U.S. 174 [91 L.Ed. 1982, 67 S.Ct. 1588], discussed in *In re Jackson* at p. 506, fn. 4, of 61 Cal.2d).

intended that it should be. In this light, *what defendant did was never proscribed under section 209."* (Italics added.) *(People* v. *Ballard* (1969) 1 Cal.App.3d 602, 605 [81 Cal.Rptr. 742]; accord, *People* v. *Ross* (1969) 276 Cal.App.2d 729, 736, fn. 7 [81 Cal.Rptr. 296].)[4]

■ ■ In such circumstances, it is settled that finality for purposes of appeal is no bar to relief, and that habeas corpus or other appropriate extraordinary remedy will lie to rectify the error: "Habeas corpus is available in cases where the court has acted in excess of its jurisdiction. [Citations.] For purposes of this writ as well as prohibition or certiorari, the term 'jurisdiction' is not limited to its fundamental meaning, and in such proceedings judicial acts may be restrained or annulled if determined to be in excess of the court's powers as defined by constitutional provision, statute, or rules developed by courts. [Citations.] In accordance with these principles a defendant is entitled to habeas corpus if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct. [Citations.]" *(In re Zerbe* (1964) 60 Cal.2d 666, 667-668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]; accord, *In re Panchot* (1968) 70 Cal.2d 105, 107, fn. 4 [73 Cal.Rptr. 689, 448 P.2d 385]; *In re Culver* (1968) 69 Cal.2d 898, 899 [73 Cal.Rptr. 393, 447 P.2d 633]; *In re Murdock* (1968) 68 Cal.2d 313, 316 [66 Cal.Rptr. 380, 437 P.2d 764]; *In re Bevill* (1968) 68 Cal.2d 854, 863 [69 Cal.Rptr. 599, 442 P.2d 679].)[5]

■ The present application is to recall the remittitur. ■ As a general rule, an error of law does not authorize the recalling of a remittitur. *(People* v. *Randazzo* (1957) 48 Cal.2d 484, 488 [310 P.2d 413].) An exception is made, however, when the error is of such dimensions as to entitle the defendant to a writ of habeas corpus. The remedy of recall of the remittitur may then be deemed an adjunct to the writ, and will be granted when appropriate to implement the defendant's right to habeas

---

[4]We recognize that *Ballard* dealt with the applicability of *Daniels* to a judgment of conviction rendered before that decision but still pending on direct appeal, and that the Court of Appeal found it unnecessary to reach the precise issue now before us. The quoted language, nevertheless, aptly sums up our reasoning in the case at bar.

[5]A useful analogy may be drawn to the rule that habeas corpus will lie to discharge a defendant held under a final judgment of conviction of violating a statute subsequently ruled unconstitutional in another case. *(In re Downing* (1935) 7 Cal.App.2d 731 [47 P.2d 322]; cf. *In re Carlson* (1966) 64 Cal.2d 70, 73 [48 Cal.Rptr. 875, 410 P.2d 379]; *In re Jackson, supra,* 61 Cal.2d 500, 508; *In re Bell* (1942) 19 Cal.2d 488, 493 [122 P.2d 22]; *In re Montenegro* (1966) 246 Cal.App.2d 515 [54 Cal.Rptr. 865].) In that situation it is apparent that the Legislature at least intended to punish the proscribed conduct of the defendant by the statute then in force; by contrast, *Daniels* teaches that after 1951 the Legislature intended *not* to punish as aggravated kidnaping those movements which are merely incidental to a robbery and do not substantially increase its risks. If habeas corpus lies in the former situation, it lies a fortiori in the latter.

corpus. (See, e.g., *In re Mitchell* (1968) 68 Cal.2d 258, 263 [65 Cal.Rptr. 897, 437 P.2d 289]; *People* v. *Ketchel* (1966) 63 Cal.2d 859, 868 [48 Cal.Rptr. 614, 409 P.2d 694]; *In re Shipp* (1965) 62 Cal.2d 547, 556-557 [43 Cal.Rptr. 3, 399 P.2d 571].)

The application should therefore have been granted by the Court of Appeal. Ordinarily, the correct disposition (see *Southwestern Inv. Corp.* v. *City of L.A.* (1952) 38 Cal.2d 623, 630 [241 P.2d 985]) would be for us to retransfer the proceeding to the Court of Appeal with directions to recall its remittitur and reinstate the appeal for the limited purpose of ruling on the merits of defendant's claim of the applicability of *Daniels* to the facts of his case. Nevertheless, as those same facts are now before us in the record prepared in connection with defendant's original appeal to the Court of Appeal, no useful purpose would be served by an order of reinstatement with the consequent delay in ultimate resolution of the issue presented.

Accordingly, we have undertaken a review of the relevant facts. We find—a common circumstance—no material dispute as to the nature and extent of the movements which defendant compelled his victims to perform. The alleged kidnapings in the case at bar arose out of a holdup of the offices of a milk company. About 9:30 p.m. on May 28, 1965, defendant and one Fraser[6] entered the building where Todisco and Umberger, employees of the company, were at work. Fraser struck both men with a gun and forced them to the floor. He then grasped Todisco by his clothing and compelled him to crawl 30 or 40 feet into an adjacent room where the safe was located. After striking Todisco several times in an unsuccessful attempt to learn the safe combination, Fraser robbed him of his wallet containing $550 in cash and a payroll check. Meanwhile, defendant straddled Umberger and compelled him to crawl 30 or 35 feet in a different direction to the nearby office of the manager. There he tied Umberger's hands and took his wallet, but threw it back when he found it contained only three dollars.

These are the movements upon which defendant's conviction on two counts of kidnaping for the purpose of robbery were predicated. Such brief movements, however, did not amount to the conduct proscribed by section 209: they were merely incidental to the robberies, and did not substantially increase the risk of harm beyond that inherent in the robberies themselves. Contrary to the Attorney General's contention, the fact that Todisco and Umberger were repeatedly struck with a gun in the course of the events does not demonstrate that their *movements* substantially in-

---

[6]Fraser was not tried with defendant Mutch and is not a party to the present proceeding.

creased the risk of such harm. Pistol-whipping, unfortunately, is a risk inherent in the crime of armed robbery, as shown here by the fact that after reaching the room containing the safe Fraser struck Todisco several more times in an effort to force him to divulge the combination.[7] The movements of Todisco and Umberger were from one room to another inside a single place of business; as we observed in *Daniels* (71 Cal.2d at p. 1140), "when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence . . . or a place of business or other enclosure—his con-

---

[7]The fear or force experienced by the victim in every armed robbery, of course, caused the Legislature to deem the crime to be of a most serious nature, punishable by a minimum of five years in state prison to a maximum of life imprisonment. (Pen. Code, § 213.) Nor will our ruling in the case at bar set defendant Mutch scot-free: when the kidnaping counts are vacated, the previously stayed sentence on two counts of first degree robbery will go into effect. The Adult Authority should give defendant credit, however, for the time served on the invalid kidnaping sentences.

The dissenting justices' fear that our opinion may result in the release of "certain highly dangerous criminals" is mere speculation that is wholly unwarranted either legally or factually. The sole attempt statistically to support their concern is set forth in footnote 6 of the dissent, but a careful reading of even that paragraph indicates no cause for alarm. Counsel is cited as authority for the figure of 295 men held in prison under section 209, but it is recognized that "at least some" have their appeals still pending. Of those whose cases have become final, a proportion of the kidnaping convictions are doubtless valid under *Daniels* (e.g., West on Habeas Corpus, Crim. 14278, petition for habeas corpus denied by minute order of February 25, 1970) or predate the 1951 amendment to section 209 (e.g., Blevins on Habeas Corpus, Crim. 14319, petition for habeas corpus denied by minute order of November 25, 1970). Among those whose kidnaping convictions are invalid, we are not told of any who are not also —like Mutch—under conviction of one or more counts of robbery. Since section 209, insofar as here relevant, punishes persons who kidnap *to commit robbery*, it would indeed be an unusual circumstance in which a prosecutor might charge kidnaping but not the underlying robbery as well, or, if both were charged, could convict the defendant of kidnaping but not robbery. And since kidnaping is the more serious offense, it is highly unlikely that a defendant would make a bargain to plead guilty to kidnaping in exchange for dismissal of the robbery charge; invariably, the converse occurs. Finally, the dissent suggests we do not know how many persons convicted of violating sections 209 or 207 are on parole; but the very fact that a person is on parole demonstrates that the Adult Authority has determined he is *not* a "highly dangerous criminal" who should not be released into society.

The only accurate empirical data before us at this time are the cases which have reached the appellate courts. In each of the 10 cases companion to *Mutch* and filed this day, the defendant was charged with and convicted of robbery or other felonies in addition to kidnaping, and we affirm each of those counts. And in every case thus far decided and reported by the Courts of Appeal in which kidnaping convictions have been reversed under *Daniels,* the defendant has also been convicted of robbery or other felonies. (See, e.g., *People* v. *Chavez* (1970) 4 Cal.App.3d 832 [84 Cal.Rptr. 783]; *People* v. *Moore* (1970) 4 Cal.App.3d 668 [84 Cal.Rptr. 771]; *People* v. *Green* (1970) 3 Cal.App.3d 240 [83 Cal.Rptr. 491]; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638 [82 Cal.Rptr. 658]; *People* v. *Blair* (1969) 2 Cal.App.3d 249 [82 Cal.Rptr. 673]; *People* v. *Ballard* (1969) 1 Cal.App.3d 602 [81 Cal.Rptr. 742]; *People* v. *Ross* (1969) 276 Cal.App.2d 729 [81 Cal.Rptr. 296]; *People* v. *Diaz* (1969) 276 Cal.App. 2d 547 [81 Cal.Rptr. 16].)

duct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the same county.' (Pen. Code, § 207.)"

It follows that on the undisputed facts defendant was convicted of kidnaping under a statute which did not prohibit his conduct at the time. Pursuant to the authorities cited herein, defendant is therefore entitled to relief by habeas corpus, and, to implement that right, is further entitled to a recall of the remittitur in his appeal and an order vacating the judgment on the kidnaping counts.

Finally, the People move to "dismiss the appeal" on the ground that defendant escaped from custody on February 17, 1970. (*Molinaro* v. *New Jersey* (1970) 396 U.S. 365 [24 L.Ed.2d 586, 90 S.Ct. 498]; *People* v. *Fuhr* (1926) 198 Cal. 593 [246 P. 1116]; *People* v. *Clark* (1926) 198 Cal. 453 [246 P. 1116]; *People* v. *Redinger* (1880) 55 Cal. 290.) In each of the cited cases the defendant remained at large at the time of his appeal; here he was recaptured the same day, and the rule is therefore inapplicable.

The motion to dismiss the appeal is denied. The cause is retransferred to the Court of Appeal for the Second Appellate District with directions to recall its remittitur in *People* v. *Mutch,* Crim. 12915, and to issue a new remittitur vacating the judgment on counts I and II and affirming the judgment on counts III and IV.

Tobriner, Acting C. J., Peters, J., and Kaus, J.,* concurred.

**KAUS, J.,**\* Concurring.—The values involved when a court has corrected a judicial misreading of a penal statute and it is sought to apply the new interpretation retroactively, are too subtle to be resolved by blanket adoption of a Blackstonian or Austinian point of view; further where the new rule consists of a basic redefinition of criminal conduct, I believe that these values are not quite the same as those mentioned in Justice Burke's dissenting opinion. (See Currier, *Time and Change in Judge-Made Law: Prospective Overruling* (1965) 51 Va.L.Rev. 201, 234-252, 260-261.)

Without belaboring my reasons, I join in the majority opinion on my reading that it applies only to cases where the defendant was found guilty after a trial and where, on no interpretation of the evidence, did he violate section 209 of the Penal Code. I would have considerably more difficulty if the record contained substantial, though conflicting, evidence of kidnaping as redefined in *Daniels.* In such a case the People would, at least, be

---

*Assigned by the Acting Chairman of the Judicial Council.

entitled to a retrial. Yet, inevitably, the passage of time would make many such retrials impossible and the case for a retroactive application of *Daniels* would certainly not be as clear. It could then be convincingly argued that a defendant who may have violated section 209 even under the *Daniels* standard and certainly did violate it under the *Wein* rule, is not entitled to the same consideration as one who, like defendant, could not be convicted of kidnaping today.

**SULLIVAN, J.,** Concurring and Dissenting.—I agree with the majority that a defendant whose conviction of a violation of Penal Code section 209 became final before our decision in *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225] is entitled to post-conviction relief "if there is *no material dispute as to the facts* relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct." (Italics added.) (*In re Zerbe* (1964) 60 Cal.2d. 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840].) Accordingly, applying the criterion of *Daniels* to the undisputed facts of the instant case, I am satisfied we can say that, as a matter of law, this defendant's conduct did not constitute a kidnaping. This is particularly so because defendant merely moved his victims around inside the same building.

But I do not agree with some of the refinements and implications of the majority opinion. It may well be that in other factual contexts, as for example where the asportation occurs outside a building or other structure, the movement of the victim accompanied by physical force upon his person may amount to kidnaping. Nor do I agree that in applying the *Daniels* test we should isolate the factor of *movement* (as the majority appear to do) from the totality of the circumstances, including the manner by which the movement is induced, and the *destination* to which it is directed. It is conceivable that movement with or without assaultive acts to a *remote* place may substantially increase the risk of harm over that necessarily present in the underlying crime, by reducing or even removing the probability of the victim's appeals for help or by exposing him to abusive conduct not otherwise feasible. Whether a defendant is a kidnaper under *Daniels* will normally be a question of fact to be determined in the light of the totality of the circumstances of the particular case.

In the instant case the petitioner's entitlement to relief is clear because under no reasonable assessment of the undisputed facts can we say there was a kidnaping. But where there *is* a material dispute as to the facts or where even under the undisputed facts it *cannot* be concluded as a matter of law that the defendant's conduct *under Daniels* fell outside the compass of the statute, he is not entitled to relief under *Zerbe*. (See my dissenting

opinion in *People* v. *Timmons, post* at p. 411 [93 Cal.Rptr. 736, 482 P.2d 648].)

Finally I must express some puzzlement concerning the majority's approval of the motion to recall the remittitur as the proper post-conviction remedy in these cases. Although it is clear, as the majority point out, that the *judicial technique* of recalling the remittitur has been utilized in order to provide appropriate relief in the context of a writ of habeas corpus (see *In re Mitchell* (1968) 68 Cal.2d 258, 263 [65 Cal.Rptr. 897, 437 P.2d 289]; *In re Parker* (1968) 68 Cal.2d 756, 761 [69 Cal.Rptr. 65, 441 P.2d 905]; *In re Martin* (1962) 58 Cal.2d 133, 141-142 [23 Cal.Rptr. 167, 373 P.2d 103]; *In re Jackson* (1964) 61 Cal.2d 500, 508 [39 Cal.Rptr. 220, 393 P.2d 420]; *In re Shipp* (1965) 62 Cal.2d 547, 557 [43 Cal.Rptr. 3, 399 P.2d 571]) and in unusual cases in the context of direct appeal (see, e.g., *People* v. *Ketchel* (1966) 63 Cal.2d 859, 868 [48 Cal.Rptr. 614, 409 P.2d 694]), the use of the the motion to recall the remittitur as an *independent post-conviction remedy* has heretofore been permitted only in two carefully limited areas: (1) when there has been a mistake of fact on the part of the appellate court resulting in a miscarriage of justice (see *In re Rothrock* (1939) 14 Cal.2d 34, 38-41 [92 P.2d 634]; *People* v. *Bartges* (1954) 128 Cal.App.2d 496, 498 [275 P.2d 518]; *People* v. *Hickok* (1949) 92 Cal. App.2d 539 [207 P.2d 620]; cf. *People* v. *Holt* (1949) 95 Cal.App.2d 1 [211 P.2d 917]), *or* (2) when the appellate court has failed to appoint counsel on appeal as required by *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] (see *People* v. *Collins* (1963) 220 Cal. App.2d 563, 566 [33 Cal.Rptr. 638]; *People* v. *Campbell* (1966) 239 Cal. App.2d 252 [48 Cal.Rptr. 693]). By their decision today the majority establish a third area in which the motion to recall the remittitur has independent vitality (i.e., when the undisputed facts show that the defendant was convicted under a statute which did not prohibit his conduct) *even though they recognize that the writ of habeas corpus is available to perform the same function.* (*In re Zerbe, supra,* 60 Cal.2d 666, 668.) I see no reason to adopt this course, but because I am in fundamental accord with the opinion of the majority—and also because the judicial technique of recalling the remittitur can be properly utilized when relief by way of habeas corpus is warranted—I enter no formal dissent on this point. I do not think, however, we should encourage the use of this procedure on collateral attack as a substitute for a petition for the writ of habeas corpus.

For the foregoing reasons I concur in the majority's disposition of this case.

**BURKE, J.,** Dissenting.—The majority opinion has the effect of creating the hazard of releasing certain highly dangerous criminals into society. Such

criminals include (1) those who but for the prosecutors' and courts' justifiable reliance on the pronouncements of this court in cases before *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], would be but are not and cannot now be made subject to prison terms for crimes they committed (e.g. armed robbery, forcible rape, and assault with a deadly weapon) and (2) those who could have been convicted of kidnaping under the *Daniels* interpretation of Penal Code section 209 had the prosecutor been aware that this court was going to reinterpret that section in *Daniels* but who cannot now be proven guilty of such kidnaping since the evidence is no longer available.

The majority note that its ruling will not set this petitioner free—that "when the kidnaping counts are vacated, the previously stayed sentence on two counts of first degree robbery will go into effect." But the rule adopted by the majority is applicable in other cases, and, as we shall see, there is a substantial likelihood that in some of those cases the defendants will be released from custody as a result of the majority opinion.

Another effect of the majority opinion may well be to impede or block future changes in statutory construction that are favorable to defendants since under the theory employed by the majority such reinterpretations likewise will be fully retroactive. Proponents considering such changes may be deterred by the effect of such changes upon other defendants incarcerated under the previous interpretation of the law.

In support of their holding, that a defendant, whose conviction for kidnaping became final before *Daniels,* is entitled to relief upon a showing that his conduct was not prohibited by the statute as construed in *Daniels,* the majority state, "the purpose of . . . *Daniels* was . . . simply to declare what the intent of the Legislature has been in this regard since the enactment of the 1951 amendment to section 209." The majority concludes that in the light of that purpose *Daniels* must be made fully retroactive. Unless *Daniels* is fully retroactive the rule in cases such as *In re Zerbe,* 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840], relied upon by the majority,[1] manifestly could not apply since petitioner's acts violated section 209 as interpreted in cases such as *People* v. *Chessman,* 38 Cal.2d 166, 192 [238 P.2d 1001].[2]

---

[1]The majority also rely upon an analogy to the rule that habeas corpus will lie to discharge a defendant held under a final judgment of conviction of violating a statute subsequently ruled unconstitutional in another case. That rule is not analogous if *Daniels* is not fully retroactive.

[2]*Zerbe* is inapplicable in cases where, unlike the present case, the facts are in dispute. Do the majority intend to deny applications for recall of the remittitur in such cases?

The conclusion of the majority that *Daniels* is fully retroactive is unwarranted. That *Daniels* involved a new interpretation of the statute does not compel holding *Daniels* to be fully retroactive. This court has a choice whether or not to make *Daniels* fully retroactive, and in the application of the relevant criteria established by the United States Supreme Court and this court, I respectfully submit *Daniels* should not be made fully retroactive to cases wherein the judgments were final as to state courts when the decision in *Daniels* was rendered.

"At common law there was no authority for the proposition that judicial decisions made law only for the future. [Fn. omitted.] Blackstone stated the rule that the duty of the court was not to 'pronounce a new law, but to maintain and expound the old one.' 1 Blackstone, Commentaries 69 (15th ed. 1809). . . . In the case of the overruled decision . . . it was thought to be only a failure at true discovery and was consequently never the law; while the overruling one . . . was 'not new law but an application of what is, and theretofore had been, the true law.'" (*Linkletter* v. *Walker,* 381 U.S. 618, 622-623 [14 L.Ed.2d 601, 604-605, 85 S.Ct. 1731].) Pursuant to the foregoing theory the overruling case was generally given retroactive effect, although exceptions were established to the general rule of retroactivity to protect those who relied on the overruled decision. (*Forster Shipbldg. Co.* v. *County of L.A.,* 54 Cal.2d 450, 458 [6 Cal.Rptr. 24, 353 P.2d 736]; *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680-681 [312 P.2d 680]; *In re McNeer,* 173 Cal.App.2d 530, 533 [343 P.2d 304]; see Note, 10 A.L.R.3d 1371, 1378, 1384.)

The Blackstonian view, however, has been called a fiction or myth (see *Griffin* v. *Illinois,* 351 U.S. 12, 26 [100 L.Ed. 891, 902, 76 S.Ct. 585, 55 A.L.R.2d 1055] [concurring opinion by Frankfurter, J.]; *United States* v. *LaVallee,* 330 F.2d 303, 304 [cert. den. 377 U.S. 998 (12 L.Ed.2d 1048, 84 S.Ct. 1921)]; *In re Lopez,* 62 Cal.2d 368, 379 [42 Cal.Rptr. 188, 398 P.2d 380] [cert. den. 384 U.S. 1016 (16 L.Ed.2d 1038, 86 S.Ct. 1929, 1930)]; Levy, *Realist Jurisprudence and Prospective Overruling,* 109 U.Pa.L.Rev. 1, 2 et seq.; Note, 14 L.Ed.2d 992, 1001). And some courts have applied the Austinian view. Austin "maintained that judges do in fact do something more than discover law; they make it interstitially by filling in with judicial interpretation the vague, indefinite, or generic statutory or common-law terms that alone are but the empty crevices of the law. Implicit in such an approach is the admission when a case is overruled that the earlier decision was wrongly decided. However, rather than being erased by the later overruling decision it is considered as an existing juridical fact until overruled, and intermediate cases finally decided under it are not to be disturbed." (*Linkletter* v. *Walker, supra,* 381 U.S. 618, 623-624 [14 L.Ed.2d 601, 605].)

The Austinian approach was applied in *Great Northern Ry.* v. *Sunburst Co.,* 287 U.S. 358, 364-365 [77 L.Ed 360, 366-367, 53 S.Ct. 145, 85 A.L.R. 254], in denying a federal constitutional due process attack on the prospective application of a state court decision changing the interpretation of a statute. There Justice Cardoza, speaking for the court, declared: "the federal constitution has no voice upon the subject [of refusal to make a new statutory interpretation retroactive]. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled are law none the less for intermediate transactions . . . whenever injustice or hardship will thereby be averted. . . . The alternative is the same whether the subject of the new decision is common law [citation] or statute [citations]."

This court has explicitly recognized that the Austinian approach may be applied. (See *Forster Shipbldg. Co.* v. *County of L.A., supra,* 54 Cal.2d 450, 458-459.) That approach was followed, or an exception made to the general rule of retroactivity under the Blackstonian view, in a recent New York case which concluded that the reinterpretation of the kidnaping statute in *People* v. *Levy,* 15 N.Y.2d 159 [256 N.Y.S.2d 793, 204 N.E.2d 842] (which, like *Daniels,* narrowed the definition of that crime), had no retroactive effect upon a case "no longer in the appellate process." (*People* v. *Pelio,* 24 App.Div.2d 500 [261 N.Y.S.2d 433, 434]; see also *United States* v. *Fay,* 394 F.2d 109, 110, fn. 1; *United States* v. *Follette,* 298 F. Supp. 925, 926.) Similarly the Pennsylvania Supreme Court held a decision limiting the felony-murder rule inapplicable to cases final when that decision was rendered (*Commonwealth* v. *Maroney,* 425 Pa. 411 [229 A.2d 913, 918]; *Commonwealth* ex rel. *Almeida* v. *Rundle,* 409 Pa. 460 [187 A.2d 266, 267]), but applicable to cases not then final (*Commonwealth* ex rel. *Smith* v. *Myers,* 438 Pa. 218 [261 A.2d 550, 559]). And some federal courts have concluded that a new broader test of insanity should not be retroactively applied to cases that were final when the new test was announced (See *Wade* v. *United States* (9th Cir. 1970) 426 F.2d 64, 73-74; *Blake* v. *United States* (5th Cir. 1969) 407 F.2d 908, 916; *United States* v. *Smith* (6th Cir. 1968) 404 F.2d 720, 728), but should be applied to cases then on appeal (*Wade* v. *United States, supra; United States* v. *Tarrago* (2d Cir. 1967) 398 F.2d 621, 622 et seq.; *Blake* v. *United States, supra; United States* v. *Smith, supra; United States* v. *Sheller* (2d Cir. 1966) 369 F.2d 293, 295). Other federal courts have held that such a test is prospective only except for the case before the court (*United States* v. *Shapiro* (7th Cir. 1967) 383 F.2d 680, 687; *Durham* v. *United States,* 214 F.2d 862, 874 [94 App.D.C. 228, 45 A.L.R.2d 1430]).

In *Warring* v. *Colpoys,* 122 F.2d 642, 644 [74 App.D.C. 303, 136

A.L.R. 1025] (Vinson, J., cert. den. 314 U.S. 678 [86 L.Ed. 543, 62 S.Ct. 184]), the Austinian approach also apparently was applied. There it was held that a prisoner was not entitled to discharge by habeas corpus where the court had power under the statutory construction to punish his acts in a criminal contempt proceeding at the time the acts were done and the sentence imposed but did not have such power under a new statutory construction at the time the writ of habeas corpus was filed.[3]

The Austinian approach likewise was followed, or an exception made to the general rule of retroactivity under the Blackstonian view, in cases where criminal responsibility was expanded by holding that a statute proscribed certain conduct that had previously been considered outside the reach of the statute or by upholding the constitutionality of a statute that had previously been held to be unconstitutional. (*State* v. *White* (Fla.) 194 So.2d 601, 604; *State* v. *Jones,* 44 N.M. 623 [107 P.2d 324, 329]; *State* v. *Stout,* 90 Okla. Crim. 35 [210 P.2d 199, 203-204]; cf. *James* v. *United States,* 366 U.S. 213 [6 L.Ed.2d 246, 81 S.Ct. 1052]; see Note, 10 A.L.R.3d 1371, 1412-1414; 20 Am.Jur.2d, Courts, § 236, pp. 563-564; 21 C.J.S. Courts, § 194, pp. 326-328.)

The federal Constitution neither forbids nor requires a retroactive application of *Daniels.* (Cf. *Linkletter* v. *Walker, supra,* 381 U.S. 618, 629 [14 L.Ed.2d 601, 608]; *Great Northern Ry.* v. *Sunburst Co., supra,* 287 U.S. 358, 364 [77 L.Ed. 360, 366]; *Benson* v. *Carter,* 396 F.2d 319, 323 [cert. den. 393 U.S. 1080 [21 L.Ed.2d 773, 89 S.Ct. 852]; motion for leave to file pet. rehg. den. 394 U.S. 994 [22 L.Ed.2d 772, 89 S.Ct. 1451]; *United States* v. *Follette, supra,* 298 F.Supp. 925.)[4]

It is apparent from the foregoing authorities that there is no philosophical or constitutional bar to not making *Daniels* fully retroactive. I turn next to a consideration of the criteria that should guide this court in determining whether to make *Daniels* fully retroactive.

In determining whether to apply newly adopted constitutional rulings retroactively, courts have considered three criteria: (1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect

---

[3]Commentators are not unanimous in their views regarding the *Warring* decision. (E.g., compare Currier, *Time and Change in Judge-Made Law: Prospective Overruling,* 51 Va.L.Rev. 201, 258, and 60 Harv.L.Rev. 437, 447-448 with 27 Iowa L.Rev. 315.)

[4]Cases petitioner relies upon to support his position that due process requires a fully retroactive application of *Daniels* (*Johnson* v. *Florida,* 391 U.S. 596, 598-599 [20 L.Ed.2d 838, 840-841, 88 S.Ct. 1713]; *Garner* v. *Louisiana,* 368 U.S. 157, 173-174 [7 L.Ed.2d 207, 219-220, 82 S.Ct. 248]; *Thompson* v. *Louisville,* 362 U.S. 199, 206 [4 L.Ed.2d 654, 659, 80 S.Ct. 624, 80 A.L.R.2d 1355]) are not in point. *Thompson* held that it is a violation of due process to convict and punish a man without evidence of his guilt; *Johnson* and *Garner* followed *Thompson.* None of the cited cases involved the question of retroactivity of an overruling decision.

retroactive application would have upon the administration of justice. (E.g., *Desist* v. *United States,* 394 U.S. 244, 249 [22 L.Ed.2d 248, 255, 89 S.Ct. 1030]; *Stovall* v. *Denno,* 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; *Johnson* v. *New Jersey,* 384 U.S. 719, 727 [16 L. Ed.2d 882, 888, 86 S.Ct. 1772]; *Linkletter* v. *Walker, supra,* 381 U.S. 618, 636 [14 L.Ed.2d 601, 612]; *People* v. *Edwards,* 71 Cal.2d 1096, 1107-1108 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; *In re Gaines,* 63 Cal.2d 234, 238-240 [45 Cal.Rptr. 865, 404 P.2d 473].) The same criteria have been considered in determining retroactivity of a decision based on a federal rule regarding acceptance of a guilty plea (*Halliday* v. *United States,* 394 U.S. 831, 832 [23 L.Ed.2d 16, 19, 89 S.Ct. 1498]), of a new rule of substantive law that broadened the test regarding insanity (*United States* v. *Tarrago, supra,* 398 F.2d 621, 624), and of the new rule enunciated in *People* v. *Ireland,* 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580] limiting the felony-murder rule (*People* v. *Jenkins,* 275 Cal.App.2d 545, 552-554 [80 Cal.Rptr. 257]). And the stated criteria likewise appear appropriate here.

The United States Supreme Court has noted that it has "relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity." (See *Desist* v. *United States, supra,* 394 U.S. 244, 251 [22 L.Ed.2d 248, 256].) However, we deal here with a question of state law and therefore are not required to give the same weight to the different criteria as the United States Supreme Court. Furthermore, I believe that the purpose of *Daniels* does not "clearly favor" retroactivity.[5] That purpose manifestly was to ascribe to the Legislature an

---

[5]The United States Supreme Court has " '. . . retroactively applied rules of criminal procedure fashioned to correct *serious* flaws in the fact finding process' " (italics added; *Roberts* v. *Russell,* 392 U.S. 293, 294 [20 L.Ed.2d 1100, 1102, 88 S.Ct. 1921]; see also *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]; *Gideon* v. *Wainwright, supra,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]), but has not retroactively applied rules of criminal procedure fashioned to correct flaws in the factfinding process that the United States Supreme Court appears to have regarded as of a less serious nature (*Stovall* v. *Denno, supra,* 388 U.S. 293, 298-299 [18 L.Ed.2d 1199, 1204-1205]; *DeStefano* v. *Woods,* 392 U.S. 631, 634 [20 L.Ed.2d 1308, 1311, 88 S.Ct. 2093]; *Johnson* v. *New Jersey, supra,* 384 U.S. 719, 728-729 [16 L.Ed.2d 882, 889-890]). It might be argued that, if the correction of a serious flaw in the factfinding process clearly favors retroactivity, so does any change in statutory construction that narrows conduct coming within a criminal statute. However, such changes can include improvements in the law of various degrees, and in my opinion all such changes should not be viewed as clearly favoring retroactivity. A contrary view could tend to impede or block changes in statutory construction, especially where the change contemplated is from an interpretation that is reasonable and not harsh to one that is reasonable and more compassionate.

intent regarding the 1951 amendment to section 209 that permitted dealing in a more compassionate manner with the substantive question of what conduct makes a person subject to the severe penalties authorized by section 209 (kidnaping for the purpose of robbery). However, the intent previously attributed by this court to the Legislature regarding that amendment (*People* v. *Lara,* 67 Cal.2d 365, 369 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Monk,* 56 Cal.2d 288, 295 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Wein,* 50 Cal.2d 383, 399-400 [326 P.2d 457]; *People* v. *Chessman, supra,* 38 Cal.2d 166, 192), did not require the courts to apply an inhumane rule. Indeed this court applied that rule during nearly two decades, and the same rule was long applied with respect to violations of section 207 (simple kidnaping). (See, e.g., *People* v. *Oganesoff* (1947) 81 Cal.App.2d 709 [184 P.2d 953]; *People* v. *Shields* (1945) 70 Cal. App.2d 628 [161 P.2d 475]; *People* v. *Cook* (1937) 18 Cal.App.2d 625 [64 P.2d 449] [each of which was cited in *People* v. *Chessman, supra,* for the rule that "It is the fact, not the distance, of forcible removal which constitutes kidnaping . . . "]; *People* v. *Roth* (1964) 228 Cal.App.2d 522, 527 [39 Cal.Rptr. 582] [same rule applied].)

Furthermore, the second and third criteria militate against a fully retroactive application of *Daniels.* Courts and prosecutors have relied upon the interpretation given section 209 in the *Chessman-Wein* line of cases, and such reliance was fully justified. Although some legal commentators viewed *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P. 2d 241], as being "in direct opposition" to the prior kidnaping cases (see 35 So.Cal.L.Rev. 212) or as having "rejected the thrust of [the] earlier kidnaping decisions" (see 110 U.Pa.L.Rev. 293, 295), *Cotton* did not state that the *Chessman-Wein* line of cases was overruled. *People* v. *Monk, supra,* 56 Cal.2d 288, 295, filed less than three weeks before the decision in *Cotton,* applied the *Chessman-Wein* rule, and a petition for rehearing was denied in *Monk* after *Cotton* was filed. Also the *Chessman-Wein* rule has repeatedly been applied in decisions after *Cotton.* (E.g., *People* v. *Lara, supra,* 67 Cal.2d 365, 395; *People* v. *Martin* (1967) 250 Cal.App. 2d 263, 268 [58 Cal.Rptr. 481]; *People* v. *Johnson* (1966) 242 Cal.App. 2d 870, 876 [52 Cal.Rptr. 38]; *People* v. *Morrison* (1964) 228 Cal. App.2d 707, 711-712 [39 Cal.Rptr. 874]; *People* v. *Zurica* (1964) 225 Cal.App.2d 25, 32-33 [37 Cal.Rptr. 118].)

Holding *Daniels* fully retroactive will have a serious impact upon the administration of justice. Although statistics have not been furnished to us as to the exact number of defendants who will be affected by such a holding,[6] the number undoubtedly is substantial. It should be noted that

---

[6]The court-appointed attorney in three companion cases to the instant one (*People* v. *Adame, People* v. *Ungrad,* and *People* v. *Smith*), states that, according to a Depart-

*Daniels* affects not only defendants convicted under section 209 (kidnaping for the purpose of robbery), as amended in 1951, but also defendants convicted under section 207 (simple kidnaping), which section was last amended in 1905. (E.g., *People* v. *Williams,* 2 Cal.3d 894, 901 [88 Cal. Rptr. 208, 471 P.2d 1008].)

In some situations a fully retroactive application of *Daniels* will create a substantial risk of a legalized prison break by kidnapers, rapists, robbers, and other dangerous criminals.[7] For example, if the prosecutor, relying on the *Chessman-Wein* rule, had amended an accusatory pleading to charge only kidnaping and to omit charges of robbery and rape and had successfully prosecuted the defendant for the kidnaping, if the kidnaping conviction were reversed because of *Daniels,* evidence to establish the defendant's guilt of the other crimes may no longer be available.[8] Or if the prosecutor, relying on the *Chessman-Wein* rule, had deemed it unnecessary at a trial for kidnaping to introduce evidence then available to show the defendant's conduct came within the test subsequently announced in *Daniels* and the defendant had been convicted of kidnaping, if the kidnaping conviction were reversed because of *Daniels,* evidence to show the defendant's acts violated the

ment of Corrections official, as of December 31, 1969, there were some 295 men in prison serving sentences under section 209 and that "at least some" of the 295 have appeals pending. He does not assert how many additional persons are now serving prison sentences for violating section 207 or how many convicted of violating section 209 or section 207 are on parole.

It should also be noted that in all likelihood some under restraint for violating section 209 or 207 pleaded guilty to the offense and if relief is to be afforded in such cases on the basis of a fully retroactive application of *Daniels* additional problems will be present since there will not be a full record and witnesses may no longer be available or their memories may have faded.

[7]The majority's assumption that such a risk does not exist is unwarranted. The majority notes that in the companion cases to *Mutch* and several Court of Appeal cases on appeal the defendant was convicted of robbery or other felonies in addition to kidnaping. This limited survey is wholly inadequate to show that there is no such risk since it is of only a small group out of an unknown total of cases and most of the cases in the survey are ones in which the sentencing was *after People* v. *Niles* (1964) 227 Cal.App.2d 749 [39 Cal.Rptr. 11]. As shown herinafter above, in cases in which the sentencing was *before Niles* there is a greater likelihood that the defendant is subject to a sentence only for kidnaping and not for other felonies he committed such as armed robbery.

[8]In *Daniels* the original indictment charged not only the aggravated kidnapings (Pen. Code, § 209) but also various crimes (rape, robbery, burglary and a violation of Pen. Code, § 288a) against the victims of the alleged kidnapings but the prosecuting authorities decided not to go to trial on the charges of the other crimes and amended the indictment accordingly. We stated that a second amended indictment could be filed charging the crimes listed above and that although the defendants may not be convicted on the record before us of the kidnaping charges, they may be prosecuted for the remaining crimes charged against them. There the remaining crimes were allegedly committed in 1966. In cases where the remaining crimes were committed years ago, the problem of proof could well be difficult or impossible.

statute as construed in *Daniels* may no longer be available. Or if a defendant had pleaded guilty to robbery and been found guilty of kidnaping for the purpose of robbery and the trial court, in reliance on the *Chessman-Wein* rule, and in order to avoid a violation of the proscription against multiple punishment in Penal Code section 654, had set aside the guilty plea and dismissed the robbery count, it may not be possible to reinstate the robbery count if the kidnaping conviction were set aside because of *Daniels* and, even if the robbery count could be reinstated, the defendant may not again plead guilty and sufficient proof of his guilt may no longer be available.

In connection with the last specified example it should be noted that the likelihood of dismissal of a count under such circumstances is greater where the sentencing preceded *People* v. *Niles, supra,* 227 Cal.App.2d 749, than in cases like the present one where the sentencing followed *Niles*. *Niles* inaugurated and approved the procedure of imposing sentences for two crimes that constituted but one act within the meaning of section 654 and staying execution of the sentence for the lesser crime. Before *Niles* this court approved the procedure of a trial court's dismissing a lesser count in order to avoid a violation of section 654. (See, e.g., *People* v. *Tideman,* 57 Cal.2d 574, 577 [21 Cal.Rptr. 207, 370 P.2d 1007].)

A conclusion that *Daniels* is not retroactive to cases that were final as to state courts when that decision was rendered would not foreclose a defendant, who feels aggrieved by the refusal of the court to extend to him the benefit of the change in law effected by *Daniels,* from pointing out in an application for executive clemency whatever basis he may have to claim that under the circumstances of his case an injustice results. However, under the majority decision making *Daniels* fully retroactive, there is no safeguard in some situations against releasing into society persons who are considered by the parole authorities as being highly dangerous and apt to repeat acts of violence.

In light of the foregoing criteria I am satisfied that *Daniels* should not be applied retroactively to cases that were final as to state courts when the decision in *Daniels* was rendered. Although some defendants will benefit from *Daniels* while others will not, solely because of the fortuities that determine the progress of their cases from initial investigation to final judgment,[9] "The resulting incongruities must be balanced against the impetus the technique [of prospective decision-making] provides for the implementation of . . . reforms, which otherwise could not be practicably effected."

---

[9]*Daniels* applies to cases on appeal in a state court when the decision in *Daniels* was rendered. (*People* v. *Williams, supra,* 2 Cal.3d 894, 900-901, and cases there cited.)

(See *Jenkins* v. *Delaware,* 395 U.S. 213, 218 [23 L.Ed.2d 253, 259, 89 S.Ct. 1677].)

My conclusion that *Daniels* should not be made fully retroactive does not subject innocent persons to punishment for a crime they did not commit. The instant case and others like it are manifestly dissimilar to cases involving an innocent person wrongfully convicted of a crime. Here at the time petitioner committed the acts in question they constituted (1) robbery and (2) kidnaping for the purpose of robbery under the interpretation we previously had given section 209 in the *Chessman-Wein* line of cases. When the Legislature enacts a statute it is expected that people will conform to its provisions. And when we construe a statute it is likewise expected that persons will not violate the statute as construed by us. If the Legislature makes a prospective change narrowing the definition of a crime, it cannot reasonably be maintained that persons previously convicted of violating the statute are innocent. Nor are persons who violated section 209, as interpreted in *Chessman* and *Wein* and whose judgments of conviction became final before *Daniels,* innocent of that crime. Furthermore, such persons committed one or more other serious crimes such as armed robbery and forcible rape with respect to which in some cases they are under no sentence as a result of justifiable reliance on the *Chessman-Wein* rule, and irrespective of whether the acts of such persons violate section 209 as interpreted in *Daniels,* they are not "innocent" persons in the ordinary sense of that word.

In my opinion petitioner's application for recall of the remittitur should be denied.

McComb, J., concurred.

Respondent's petition for a rehearing was denied April 22, 1971. Wright, C. J., did not participate therein. Kaus, J.,* participated therein. McComb, J., and Burke, J., were of the opinion that the petition should be granted.

---

*Assigned by the Acting Chairman of the Judicial Council.