[Crim. No. 21168. Second Dist., Div. Five. Aug. 28, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
CHARLES K. ANDERSON, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Appellant.

Edward J. Horowitz, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**KAUS, P. J.**—This is a People's appeal pursuant to section 1506 of the Penal Code from an order vacating a 1968 conviction on habeas corpus and permitting the withdrawal of a guilty plea.

## FACTS

In the summer and early fall of 1967, defendant[1] allegedly committed 10 felonies. Two separate informations were consolidated for trial. The only counts with which we are concerned are counts IV, V, VIII and IX of the consolidated information. Counts IV and V each charged kidnaping for the purpose of robbery. Each victim was alleged to have been subjected to bodily harm. Counts VIII and IX each charged armed robbery.

The case was called for trial on January 12, 1968. As a result of a plea bargain the allegation of bodily harm was stricken from count V and defendant pleaded guilty to that count, as well as to count VIII. Sentence was imposed on February 5, 1968, when a prior robbery conviction was found to be true. All counts other than counts V and VIII were dismissed. No appeal was taken. On April 27, 1970, defendant filed a petition for a writ of habeas corpus in the Supreme Court. It disclosed that defendant had pleaded guilty "by reason of deal by district attorney and public defender." The main burden of the petition was that under the intervening decision of *People* v. *Daniels,* 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], defendant was not guilty of kidnaping. On June 28, 1971, the Supreme Court ordered that cause be shown in the trial court why defendant should not be permitted to withdraw his guilty plea to count V.

The order to show cause came on for hearing on October 29, 1971. Both the deputy district attorney and the deputy public defender who negotiated the 1968 plea bargain testified. Copies of both preliminary hearings which resulted in the consolidated information were before the trial court.

The testimony of the two attorneys showed a very straightforward plea bargain, motivated on defendant's part chiefly by fear of the death sentence on the counts charging kidnaping for the purpose of robbery with bodily injury. While the prosecutor insisted on a guilty plea to at least one kidnaping count, nobody cared which particular count was chosen.[2]

At the habeas corpus hearing the People were represented by a deputy attorney general and a deputy district attorney, the former being concerned merely with the opposition to the habeas corpus petition. In this effort he was unsuccessful and the conviction on count V was vacated and

---

[1]Although, procedurally, this is a People's appeal from the grant of relief on Anderson's habeas corpus petition, we shall, for the sake of clarity, refer to him as defendant.

[2]We note that counts I, II, III, VI and VII, as well as counts IV and V charge kidnaping for the purpose of robbery. None of these, however, charged bodily harm to the victim.

the guilty plea withdrawn. In accordance with the procedure suggested in *People* v. *Daniels, supra,* 71 Cal.2d at page 1143, the eight counts which had been dismissed on February 5, 1968, were reinstated.

At this point the situation was this: it was understood that the People, through the Attorney General, were going to appeal the ruling vacating the conviction on count V. In the meanwhile, however, the district attorney found himself with nine of the original ten counts on his hands. The defendant, of course, was still under a five-to-life prison sentence on count VIII, which was unaffected by the habeas corpus proceedings.

In view of the fact that defendant's imprisonment on the robbery count gave the Adult Authority all of his life in which to rehabilitate him, nobody in the courtroom was very anxious to go through the ceremony of trying him on any of the remaining nine counts. In fact, it appeared that a new plea bargaining process between the defense and the deputy district attorney had started even before the deputy attorney general had lost on the habeas corpus matter. During a candid discussion with the court the deputy district attorney expressed the fear that if a new plea bargain were to be entered into, pursuant to which defendant would plead guilty to a count other than count V and the other counts would be dismissed, "that would make the job of the Attorney General [on the appeal] moot." Nevertheless, the district attorney wanted to forge ahead with a new bargain because he felt that the interests of justice dictated it "from the District Attorney's standpoint, although . . . not from the Attorney General's. . . ."

During the ensuing give-and-take with respect to the new plea bargain, the court dropped the interesting remark that if the facts with respect to count IV, as shown in the preliminary hearing transcript, were true, a conviction on that count would not have been set aside, *Daniels* notwithstanding. To make a long story short, the following bargain was then struck and executed insofar as this could be done: defendant pleaded guilty to another robbery count (count IX); his sentence on that count was to be concurrent with that he was already serving on count VIII, time served on count V to be credited; all remaining counts — including, of course, counts IV and V—were dismissed; and finally it was stipulated that if the Attorney General were to be successful on his appeal from the relief granted with respect to count V, defendant would be permitted to withdraw the new guilty plea to count IX, so that, in effect, the matter would be restored to the status before the filing of the habeas corpus petition.[3]

---

[3]The proper execution of the new plea bargain had to be accomplished by taking a whole series of waivers from defendant. During the course of that proceeding the district attorney misstated the bargain as understood by the court and had the

## DISCUSSION

■ On appeal the People contend that habeas corpus relief with respect to convictions for acts which are recognized as non-crimes by *Daniels* should not be granted where the convictions result from plea bargains. It is recognized that *In re Madrid,* 19 Cal.App.3d 996, 1003-1004 [97 Cal.Rptr. 354], is to the contrary. We are urged to disagree with *Madrid,* the rule of which is said to be under consideration by the Supreme Court at this time.

The People further contend that the conviction on count V should not have been vacated, because at the time of the 1968 plea bargain it was just pure chance that the parties did not select count IV, which was a much stronger case and would have stood up against collateral attack in spite of *Daniels.*[4]

Apart from disagreeing with the People factually and legally, the defense claims that the appeal is moot, since the People voluntarily dismissed count V after the adverse ruling in the habeas corpus proceeding. The People disagree, pointing to the provision in the second plea bargain which made it wholly contingent on an affirmance of the habeas corpus relief.

We must, of necessity, first discuss the claim of mootness.

■ While it does seem odd for the People to be urging the validity of the 1968 conviction on count V, when 10 minutes after the 1971 order appealed from they dismissed that very count, it must be recognized that the dismissal was an integral part of the second plea bargain from which all concerned presumably received substantial benefits.[5] There can be no

---

defendant agree that in the event of a reversal of the habeas corpus relief as to count V "all of the other counts" would again be reinstated. That this was not the court's understanding of the bargain is demonstrated on the very next page of the transcript: ". . . The likelihood is if my decision in this case is reversed, we start out just where we were before you filed that writ of habeas corpus and in all likelihood you will have to come down for resentencing, but it simply means today's proceedings are a complete nullity; you understand?"

[4]The People do not contend that count V involves kidnaping in the *Daniels* sense.

[5]Compare the statement in *In re Dapper,* 71 Cal.2d 184, 187-188 [77 Cal.Rptr. 897, 454 P.2d 905], made in a slightly different procedural context: ". . . The reinstatement of the dismissed charges may have been an integral part of the order granting the writ, and had Dapper attacked the order on the basis of the part reinstating the charges, the entire order may have been held inseverable. [Citations omitted.] He did not appeal the order granting the writ or move to set aside the order and vacate the writ. He has attacked only the portion of the order which, based on the stipulation, directed reinstatement of the dismissed charges. He has never urged that the order should be set aside in its entirety. Instead, he has taken advantage of the order by withdrawing his guilty pleas and proceeding to trial on the merits of all of the charges. We are satisfied that in the circumstances of this case he may

question that in the event of a reversal the trial court would have the power to reinstate the dismissed count as stipulated. (*People* v. *Landry*, 276 Cal.App.2d 370, 377 [80 Cal.Rptr. 880]; cf. *People* v. *Daniels*, 71 Cal.2d 1119, 1143 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) The appeal is not moot.

On the merits of the appeal, we choose to follow the *Madrid* decision, in which a hearing was denied and which has never been questioned by any appellate court.[6]

The People's other point, as noted, is that in 1968 it did not matter to anyone to which count charging a violation of section 209 defendant pleaded guilty and that he should not be permitted to take advantage of the fact that the parties happened to pick one which did not pass muster under the later *Daniels* rule.

While defendant disputes that the People would fare any better with respect to count IV, we assume that he is wrong and that the trial court was correct when it indicated that no relief would have been granted had defendant pleaded guilty to count IV.

One short answer to the People's argument is to ask a question: what if the shoe were on the other foot? If the same process of random selection which resulted in a guilty plea to count V, had instead culminated in a plea and conviction on count IV—could not defendant argue with equal plausibility that habeas corpus relief should nevertheless be granted, because it would be available had he pleaded to count V instead?

There obviously is no wholly satisfactory answer to the People's position in this case, as there is none to the argument which defendant would advance in the supposed situation. The only practical solution is to look at the record as we find it, rather than at a record reconstructed to reflect a plea bargain other than the one that was actually made, but which just might have been made in the light of the parties' relative bargaining strengths, their goals, fears and motivations. In the case at bar the trial court was quite fortunate to have the benefit of the testimony of both attorneys involved in the 1968 bargain. It was doubly fortunate in that the recollection of each attorney dovetailed pretty much with that of the other. A finding that it was pure chance which resulted in a plea to count

not be permitted at this time to attack the order granting the writ after he has taken advantage of those portions which are favorable to him."

[6]For what it is worth, we point out that the habeas corpus petition in this case disclosed on its face that the plea to count V had been entered "by reason of [a] deal." This did not stop the Supreme Court from issuing its order to show cause.

V rather than to count IV, would certainly find support in the record.[7] In many cases—if not in most—no such clear cut reconstruction of the parties' intentions with respect to an old bargain would be possible.

The People do, of course, have a valid point in arguing that they are being "penalized" for the 1968 prosecutor's failure to anticipate *Daniels* and to insist on a plea to a count which would be unaffected by a decision that was to be rendered almost two years later.

One answer to that argument is a frank recognition that a case such as *Daniels* which holds non-criminal certain conduct previously thought to be felonious, cannot help "penalizing" the People. It should be remembered, however, that the Supreme Court has minimized any adverse retroactive effect of *Daniels* in a number of ways, principally, perhaps, by permitting the reinstatement of charges which somehow fell by the wayside in the course of obtaining a conviction for kidnaping.[8] That in this case

---

[7]Defendant disputes this, but all that his argument amounts to is that such a finding is not compelled. Of course, no such finding was ever made, expressly or impliedly, since the trial court reached the same conclusion as we do—that it had to take the record as it was.

[8]Thus, in the case at bar, the order to show cause directed at the trial court contained the following appendix:

"We deem it appropriate to reiterate that the granting of relief pursuant to People v. Daniels, 71 Cal.2d 1119, and People v. Mutch, 4 Cal.3d 389, may be conditioned upon liability for punishment that might have been imposed for crimes relating to any kidnaping conviction that is set aside, and which liability would have been suffered had the defendant not suffered an invalid kidnaping conviction. (See Pen. Code, § 1484.) To that end when a kidnaping conviction is set aside, the trial court or the appellate court, as the case may be, may adopt any of the following procedures that are appropriate to the facts of the particular case before it.

"1. It may order into effect sentences that were suspended pending service of the sentence on the kidnaping conviction. (See People v. Mutch, 4 Cal.3d 389, 398, n. 7.)

"2. It may vacate the reversal or setting aside of any conviction that was reversed or set aside to avoid double punishment for a single course of criminal conduct involving the kidnaping conviction, and it may then impose sentence on any such reinstated conviction.

"3. It may modify the judgment to impose sentence for any lesser offense included in the accusatory pleading and supported by the evidence. (See People v. Marshall, 48 Cal.2d 394.)

"4. It may order the accusatory pleading amended to recharge any offenses that were initially charged but the charges of which were subsequently dismissed. Thereafter, defendant may be tried on the amended pleading. (See Pen. Code, § 1009; People v. Daniels, 71 Cal.2d 1119, 1143.)

"Finally, we note that when an order to show cause is made returnable before the appellate court that theretofore affirmed the challenged kidnaping conviction, that court, if it determines that the record on appeal is insufficient to resolve the question of the validity of the kidnaping conviction, may remand the case to the trial court for further factual determinations and appropriate further proceedings in the light of such determinations."

defendant obtained relief only at the expense of the reinstatement of charges on nine felony counts, is witness to the fact that the "penalty" suffered by the People is theoretical, rather than real. It is not insignificant that after the reinstatement of those charges the People were perfectly content to enter into a new bargain involving the dismissal of eight of those reinstated counts! Obviously one of the motivations for that bargain was that as a practical matter the Adult Authority has defendant's life in which to consider his restoration to society and that his eventual release depends on his attitude and behavior in prison much more than on the number of counts on which he is convicted.[9]

Finally, it should be observed that as far as the facts of this case are concerned, the prosecution has only itself to blame for not caring whether defendant pleaded guilty to count IV or count V. *People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457], the case specifically overruled by *Daniels,* as well as its predecessors, had played to mixed reviews. Critical evaluations of the *Wein* rule—listed on page 1132 of the *Daniels* opinion—were there for anyone to read. Even if the precise holding of *Daniels* was unforesee-able, it certainly was in the cards that the *Wein* rule would be rethought and that count IV had a better chance for surviving any reasonable re-evaluation of the rule than count V.

The order is affirmed.

Stephens, J., and Aiso, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 25, 1972.

---

[9]The trial court did what it could to make it clear to the Adult Authority that in its opinion defendant was a major offender. It stated: ". . . I want to make this observation. I am in no way downgrading the seriousness of the offense involved. This is a plea bargain situation. I think the record speaks for itself.

"The entire pattern of conduct, I think, is extremely serious. I think this matter should be considered very carefully by the Adult Authority before the defendant is paroled. When they are satisfied he can be released safely on parole, I certainly have no objection to his being paroled. I just want them to be quite certain this is the proper thing to do.

"I would, in this particular instance, we are going to have—I am just thinking out loud—there will be a transcript of these proceedings which will be prepared auto-matically when the District Attorney or rather the Attorney General files his Notice of Appeal under 1203.01. I would ask that—well, strike that.

"Rather than simply preparing and sending to the Department of Corrections what transpired once the Court said 'Does the defendant waive further arraign-ment before judgment' which I think technically is all that is required, that is obviously not enough and I would request that the 1203.01 transcript include today's proceedings commencing with the point where the Court indicated that it would set aside the 209 commitment."